**Albert J. SELL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–1674.**

District of Columbia Court of Appeals.

Argued Jan. 21, 1987.
Decided May 12, 1987.

---

Eric J. Branfman, with whom Robert E. Greenberg, Washington, D.C., was on the brief, for appellant.

Mary Incontro, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Mark H. Dubester, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, BELSON and ROGERS, Associate Judges.

ROGERS, Associate Judge:

In this appeal from his conviction of corrupt influence (D.C. Code § 22–704) (1981), sodomy (id. § 22–3502), and obstructing justice (id. § 22–703), appellant Albert J. Sell contends principally that he was denied his sixth amendment right to a speedy trial as a result of a fifty-one month delay between indictment and trial. At issue in particular is the appropriate weight which should be accorded to the delay caused by two interlocutory appeals taken by the government in light of the recent opinion of the Supreme Court in *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).[1] We hold that the government has failed to meet its burden to show that appellant's right to a speedy trial was not violated. Accordingly, we reverse.

### I.

This case arose out of two confrontations between appellant, a ten-year veteran of

---

**1.** Alternatively, appellant contends that he is entitled to a new trial because of the violation of his right under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to receive exculpatory evidence held by the prosecution, and his right to introduce evidence of the complainant's reputation for truthfulness and mo-tive to falsify. He also contends that he is entitled to a dismissal of the charges of obstruction of justice and corrupt influence because the government's evidence was insufficient. In view of our disposition, we do not reach these issues.

the Metropolitan Police Department, and Lois Frontuto, a known prostitute. Frontuto testified that following her arrest by appellant on September 30, 1980, appellant had released her after he had driven her to an empty garage and she had performed oral sodomy on him. After appellant drove her back to 15th and Massachusetts Avenue, she flagged down a police officer and told him what had happened. Appellant returned to the scene, and Frontuto identified him. Another officer drove her around the area until she located the garage where the alleged events occurred and she identified a tissue which she had thrown out of the police car window onto the garage floor after using it to wipe out her mouth when appellant ejaculated into it.

The second confrontation occurred on March 4, 1981 when Frontuto met appellant while she was wearing a concealed body tape recorder supplied by the police. In this taped conversation, Frontuto told appellant that she had been subpoenaed to testify before the grand jury, and he advised her to "tell them you don't want anything else to do with it" and repeatedly pointed out "they can't make you talk." He also threatened to sue her for defamation, and warned that his fellow officers would give her a hard time if she persisted in her complaint against him.

At trial appellant denied the charges. He testified that Frontuto was angry with him because he had forced her to return money which she claimed she had earned by soliciting two men for prostitution. Regarding the taped conversation, appellant claimed that he told Frontuto not to say anything so she would not tell more lies.

Appellant was indicted on June 3, 1981. On October 28, 1981 a jury trial commenced, but a mistrial was declared the next day. On January 18, 1982 appellant's motion to suppress the March 4, 1981 tape recording was granted. The government appealed, and on January 31, 1983 this court remanded the case for clarification of the standard applied in assessing Frontuto's consent to the recording of her conversation with appellant. Thereafter, the trial

judge granted a second motion to suppress on January 25, 1984, and the government again appealed. Four months later the government filed a motion to expedite under D.C.Code § 23–104(e) (1981), which provides that government appeals from rulings issued before or during trial "shall be expedited." The motion was granted and on January 23, 1985, this court reversed the order of suppression. *United States v. Sell,* 487 A.2d 225 (D.C.1985). The second trial commenced on August 26, 1985, almost fifty-one months after appellant was indicted.

## II.

Appellant contends that his sixth amendment right to a speedy trial was violated. In assessing this claim, we must examine four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant caused by the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Graves v. United States,* 490 A.2d 1086, 1091 (D.C.1984) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986).

### Length of Delay

When the delay is a year or more, "the accused has established a *prima facie* sixth amendment violation, and the burden shifts to the government to prove that no violation has occurred." *Parks v. United States,* 451 A.2d 591, 600 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983). *See also Graves, supra,* 490 A.2d at 1091; *Jackson v. United States,* 503 A.2d 1225, 1227–28 (D.C.1986). Moreover, the government's burden to overcome the presumption of prejudice "increases in proportion to the length of the delay." *Graves, supra,* 490 A.2d at 1091. Greater delay is tolerated the more serious and complex the charge. *Id.* The trial court found that the fifty-one month delay from appellant's indictment on June 3, 1981, until the commencement of his second trial on August 26, 1985 constituted "an extreme delay in this rather simple

case which gives *prima facie* merit to the defendant's claim that he has been denied his constitutional right to a speedy trial." We agree.

### Reason for the Delay

Different reasons for delay of a trial are to be assigned different weights. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. Willful attempts to delay the trial for the purpose of impairing the defense are weighted heavily against the government; institutional delays are considered neutral; and delays for valid reasons are considered justified. *Id.* This court has "created an intermediate category of 'significant' delay for government actions deemed less culpable than deliberate foot-dragging to gain tactical advantage but more culpable than the neutral category exemplified by failure to advance trial dates due to court conges-

tion." *Graves, supra,* 490 A.2d at 1092, citing *Day v. United States,* 390 A.2d 957, 968 (D.C.1978) (government failure to move for expedition of interlocutory appeal constitutes significant delay); *Bethea v. United States,* 395 A.2d 787, 791–92 (D.C.1978) (substantial weight assigned to delay due to government indifference after numerous continuances and assertion of the right); and *Miller v. United States,* 479 A.2d 862, 866 (D.C.1984) (government failure to take reasonable steps to bring case to trial is significant delay).

The key issue in the instant case revolves around the weight to be given to almost two years consumed by two interlocutory appeals taken by the government,[2] and the delay caused by the government's failure to expedite the appeals as required by D.C. App.R. 4–III(a).[3] Appellant argues that

**2.** The delay in this case involves five distinct periods:

(1) eight months from indictment to the government's filing of a notice of appeal from the order suppressing the tape recording (June 3, 1981 to January 28, 1982);

(2) one year on appeal, ending with this court's remand for clarification of the trial court's ruling (January 31, 1983);

(3) one year of remand proceedings, ending when the government filed a notice of appeal from the second suppression order (February 2, 1984);

(4) one year on appeal until this court reversed the suppression order (January 23, 1985); and

(5) seven months until the second trial commenced (August 26, 1985).

The trial judge found that twelve months of this delay was due to the government's failure to expedite the interlocutory appeals, and so was classified as significant. He classified the remainder of the delay as neutral, with the exception of 1.6 months which he categorized as justified.

**3.** D.C.App.R. 4–III(a) (which has been slightly modified and recodified as D.C.App.R. 4(c) effective January 1, 1985) provides that in expedited appeals the following steps should be taken:

(1) Counsel for appellant shall file his notice of appeal promptly with the Clerk of the Superior Court and shall advise the clerk of this court in person or by telephone of the forthcoming appeal.

(2) Counsel for appellant shall designate or advise the Clerk of the Superior Court of the pleadings and documents necessary to be included in the record for use on appeal. The record shall include the notice of appeal and

the order appealed from or docket entry with respect thereto if there be no written order.

(3) Counsel for appellee shall counter-designate or advise the clerk of such additional pleadings and documents he deems necessary for inclusion in the record on appeal.

(4) The Clerk of the Superior Court shall transmit the record promptly to the clerk of this court.

(5) Counsel for appellant shall arrange to pay the necessary fees, if required, to the Clerk of the Superior Court and to the clerk of this court.

(6) Counsel for appellant shall advise the clerk of this court of the telephone number where he may be reached and he shall advise the clerk of the name, address and telephone number of counsel for appellee.

(7) Counsel for appellant shall submit such motion, memorandum of law, or other documents which he believes to be essential for the court's consideration. Copies of pertinent documents filed in the Superior Court may be attached as exhibits to an appropriate motion or pleading filed with this court.

(8) Counsel for appellee shall comply with paragraph (7) and he is encouraged to appear in the office of the clerk of this court together with counsel for appellant to enable the clerk to schedule the appeal for a prompt appellate argument if the court deems argument necessary and advisable.

(9) The clerk shall advise the Chief Judge or appropriate division of this court of the pendency of the emergency or expedited appeal in order that a prompt determination may be made with respect to scheduling of argument or consideration of the case on the record and pleadings filed by counsel.

the trial court correctly labeled "significant" twelve months of delay caused by the government's failure to expedite. The government responds that *Loud Hawk, supra,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640, overrules our decision in *Graves, supra,* 490 A.2d at 1096, to the extent that reasonable appellate delay must be characterized as justifiable delay, rather than neutral delay. It further argues that *Loud Hawk* implies the failure to move for expedition is to be treated simply as one factor, and the delay caused thereby ascribed less than significant weight. The government does not contend, however, that *Loud Hawk* suggests this court cannot by rule require interlocutory appeals to be expedited by the parties. Indeed, other than the general provision in the federal statute, 18 U.S.C. § 3731 (requiring, *inter alia,* the prosecutor to certify that appeal "is not taken for purpose of delay and that the evidence is a substantial proof of fact material in the proceeding"), which is similar in some respects to D.C.Code § 23–104(e), the Supreme Court in *Loud Hawk* was not faced with a rule comparable to our Rule 4–III(a).[4]

■ We agree that *Loud Hawk* has partially overruled our decision in *Graves* by requiring that reasonable appellate delay be treated as justifiable delay in a speedy trial analysis. But we do not agree that delay caused by the failure of the government to comply with the rules of this court requiring expedited consideration of interlocutory appeals can no longer be treated as significant. Not only was the Supreme Court not presented with that issue in *Loud Hawk,* but the only appeal in *Loud Hawk* which the Court deemed to be relevant to its speedy trial analysis was, in fact, an expedited appeal. 106 S.Ct. at 653, 654. Nor does *Loud Hawk* offer guidance on whether the failure to expedite is to be treated merely as one of several factors in

determining the weight of appellate delay toward a speedy trial claim, and we therefore follow the analytical framework adopted by the en banc court in *Graves.*

■ Turning to the facts of the instant case, each interlocutory appeal took almost exactly one year. The government did not take any of the steps required by D.C. App.R. 4–III(a) in either appeal, nor did it move to expedite the first appeal under D.C.Code § 23–104(e). In the second appeal the government's motion to expedite under § 23–104(e) was not filed until four months after it had filed its notice of appeal. Notwithstanding the grant of its motion for expedition, the government subsequently moved for a continuance to file its reply brief, explaining that time was needed for a supervisor to review the brief, but suggesting that the continuance need not have the effect of postponing the oral argument which was already scheduled. In *Graves, supra,* 490 A.2d at 1095–96, we pointed out that Rule 4–III(a) "generally requires the parties to employ common sense measures to expedite the appeal." We stated:

> In weighing the delay caused by a pretrial government appeal, then, the court must attempt to distinguish between delay that could not have been avoided by efforts to expedite and unreasonable delay resulting from the failure to expedite. Unavoidable delay should be considered neutral, and thus counted against the government to roughly the same degree as delay caused by court backlog. Unreasonable delay caused by failure to expedite the appeal should be considered significant.

*Id.,* at 1096. Further we stressed that the prosecution's responsibility involves more than filing an appeal with reference to § 23–104(e). *Id.* at n. 11.

In *Loud Hawk,* the Supreme Court held that because of the important societal inter-

---

**4.** Nothing in *Loud Hawk* indicates the parties failed to comply with the rules of the Ninth Circuit Court of Appeals. Rule 20 of the Ninth Circuit provides that criminal appeals in which the trial did not exceed three days are to be expedited, and provides for individualized schedules for transcript preparation and filing of the record, as well as shortened times for filing and serving briefs. Under Rule 19(b) the Clerk is directed to enter an order dismissing an appeal upon an appellant's failure to file a timely record or brief, or otherwise to comply with the court's rules.

ests served by appellate review, interlocutory appeals by the government generally justify delay, 106 S.Ct. at 656. Further, because "[t]he *Barker* test furnishes the flexibility to take account of the competing concerns of orderly appellate review ... and a speedy trial" the Court adopted *Barker*'s "functional test to determine the extent to which appellate time consumed in the review of pretrial motions should weigh toward a defendant's speedy trial claim." *Id.* at 655. In assessing the reasonableness of delay associated with such appeals, the Court instructed that consideration may be given to such factors as "the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *Id.*, at 656. The government argues here that the appellate delay should not add significant weight to appellant's speedy trial claim because the issue appealed involved evidence which was vital to the case (suppression of key corroborating evidence and direct evidence of the obstruction of justice charge) and the government's position that the trial court had erred was very strong. In *Loud Hawk* the Supreme Court stated "reversals by the Court of Appeals are prima facie evidence of the reasonableness of the Government's action." *Id.*

We agree that the issue appealed here was important to the government's case—it was also a question of first impression, *Sell, supra,* 487 A.2d at 228—and that the government's position for reversal on appeal was strong. *Loud Hawk,* however, stands simply for the proposition that delay due to reasonable interlocutory appeals does not weigh heavily against the government and is deemed justified. Accordingly, the entire two years of interlocutory appeal cannot be charged against the government. We do not read *Loud Hawk,* however, to require evidence of bad faith or dilatory purpose before pretrial appellate delay can be assigned "effective weight," 106 S.Ct. at 656, against the government. Further, since *Loud Hawk* did not involve a rule like

our Rule 4–III(a), our decision in *Graves,* that delay which could have been avoided by expediting the appeal (i.e., unreasonable delay) weighs significantly against the government, does not conflict with *Loud Hawk.* Nor does *Loud Hawk* require us to modify our rule.

The trial judge found that six months constitutes a reasonable amount of neutral institutional delay for an expedited appeal, and thus one of the two years at issue is deemed neutral and the other, caused by failure to expedite, is deemed significant. *Loud Hawk* requires that reasonable appellate delay be considered justified rather than neutral, but otherwise we agree with the trial court's determination. Although our procedures for scheduling appeals make it impossible to tell exactly how much time could have been saved by expediting the appeals, certain factors can be examined. In *Graves, supra,* 490 A.2d at 1096, we held that in an expedited appeal the government should file its brief approximately twenty days after the record is filed with the court, rather than the normal forty days. D.C.App.R. 31(a). Here, the government filed its brief in the first appeal 49 days after it filed the record on appeal, and the government added to the delay by moving to extend the filing deadlines for its briefs and by failing to ensure both timely certification of the record on appeal and timely transmittal of the entire record. In the second appeal, the government's main brief was filed 66 days after it filed the record on appeal, and only after it had filed a motion for an extension of time; it filed a reply brief after seeking a week's continuance. Thus, under *Graves,* the trial court's allowance of six months is generous to the government.[5]

In assessing whether the government's failure to expedite the appeals evinces bad faith or neglect, it is not without significance that at the time the government filed both interlocutory appeals, this court had announced in *Day, supra,* 390 A.2d at 969, that it would treat *all* appellate delay as

---

**5.** The government did not challenge the trial judge's finding that six months was a reasonable time for an expedited appeal, and may not do so

for the first time on appeal. *Allen v. United States,* 495 A.2d 1145 (D.C.1985) (en banc) (plain error).

significant delay to be weighed heavily against the government if it failed to seek expedition. The government also was on notice of its obligation to seek expedition under D.C.Code § 23–104(e) and Rule 4–III(a). Nevertheless, notwithstanding its awareness of appellant's request for a speedy trial, *see Graves, supra,* 490 A.2d at 1094 ("delay occurring after the assertion of the right is to be accorded more weight than delay occurring before any assertion," citing *Bethea, supra,* 395 A.2d at 791–92), the government took no action to obtain expedition during the first appeal, and in fact delayed the appeal by failing timely to transmit the record contrary to our Rules. In the second appeal, the government tardily sought expedition and then delayed filing its reply brief although the court had granted its request to expedite.

Whether the remand period is viewed as part of the appeal process, *Loud Hawk,* 106 S.Ct. at 652, or as part of the trial proceedings, the parties had an obligation to seek expedition consistent with a defendant's right to a speedy trial. Moreover, under the circumstances here, where the first appeal resulted in a remand of the suppression ruling, the government had a heightened obligation to assure expedition since it was likely to file another interlocutory appeal if the trial court again ordered suppression of the taped conversation, and since it knew that appellant wanted to return to work as a police officer as soon as possible. *See* discussion of assertion of rights, *infra.* Nevertheless, the impact of any failure by the government to seek expedition during the remand was reduced somewhat since additional briefing was required and the trial court took the case under advisement for six months of the twelve-month remand period. In addition,

the trial court noted that appellant had conceded at oral argument that this period constituted neutral plus delay, and appellant does not contest this characterization on appeal.

Accordingly, we hold that twelve months of the delay caused by the government's failure to expedite the appeals weighs significantly against the government, while the remainder of the delay in the appellate court proceedings is justifiable.[6] In so holding we do not suggest that appellant did not have an obligation to seek expedition of the appeals or the proceedings on remand, but we address this obligation in evaluating his assertion of the right to a speedy trial.[7]

### Assertion of the Right

"The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Appellant expressed an early interest in a speedy trial. At the first status hearing on July 16, 1981, following his indictment and arraignment, appellant's counsel advised the trial court that appellant was on administrative leave from his job and wanted an early trial date so that he could return to his position with the police department. He agreed to a trial date of September 1, 1981, however, in view of administrative problems in the prosecutor's office. At the next status conference, on July 29, 1981, appellant's counsel reemphasized appellant's desire for a speedy trial when the court indicated that September 1 was unavailable because of conflict with another trial and that the judge's vacation plans prevented a trial in August. When a mistrial was granted on

---

**6.** Appellant also contends that (1) 2.1 months of delay categorized by the trial judge as neutral were in fact significant, since they were due to the prosecutor's failure to staff the case, (2) one month of delay deemed neutral should actually be considered significant because the government changed its theory of the case, and (3) 1.6 months deemed justified should actually be considered neutral because the complaining witness was not in fact unavailable. These small amounts of time would not tip the overall bal-

ance under the *Barker* factors, and therefore we do not address them.

**7.** Nor do we fail to recognize the responsibilities of the judicial system under D.C.Code § 23–104(e) and Rule 4–III(a). However, Rule 4–III(a) provides a mechanism to assure that the appropriate expedition occurs at least with respect to the non-decisional aspects of an interlocutory appeal; our internal rules of procedure address the decisional process. I.O.P. VIII(I).

the second day of trial, October 29, 1981, appellant's counsel pressed for an early pretrial hearing date because appellant's sick leave fund was running out and he was under considerable strain as a result of the pending charges. Thus, during the five months between indictment and the declaration of a mistrial at the first trial, appellant repeatedly pressed for an early trial date. Thereafter, however, his posture changed somewhat.

After a continuance of the suppression hearing had been granted to the government because of the unavailability of Frontuto, appellant's counsel moved, on the continued date, for a further postponement. Defense counsel explained that pressing business relating to another client would necessitate postponement of the hearing until early January 1982, and that counsel thought it would be unfair to appellant to proceed with the motion hearing when he might have to obtain new counsel for trial. The trial court expressed displeasure that the case was not moving as quickly as it should, and opined that counsel's first obligation was to the court. The prosecutor advised that but for defense counsel's motion for a postponement, the government would have been ready to proceed. The trial court agreed to grant one final continuance of eleven days, to December 29, 1981.

Following the trial court's suppression of the tapes, on January 18, 1982, appellant did not request a speedy trial until April 1985, three months after this court disposed of the second interlocutory appeal. At that time he filed his first written motion to dismiss the indictment for lack of a speedy trial. In a footnote he moved in the alternative for a speedy trial. The trial court denied the motion without prejudice to its renewal after trial. After trial appellant renewed his motion to dismiss the indictment, attaching affidavits of his counsel and an investigator in support of his claim that his defense was prejudiced because he was unable to locate a key witness who had been available to testify at the first trial.

 During the three years consumed by the two appeals and the intervening remand, appellant moved to dismiss the first appeal because the government had failed timely to transmit the record in accordance with our Rules 10 and 11, but made no reference to Rule 4–III(a) or D.C. Code § 23–104(e), or to his desire for a speedy trial. We do not view this motion as the equivalent of a request for a speedy trial. In *Graves, supra,* 490 A.2d at 1098–99, we distinguished between assertions by a defendant seeking dismissal on speedy trial grounds, and assertions that a speedy trial should be held. Appellant argues that he did not move for a speedy trial during the appeal period because he could not be tried until the interlocutory appeals were resolved. Further, he argues that his motion was tantamount to a request for a speedy trial because had it been granted, the appeal would have been dismissed and the case could have proceeded to trial. We stated in *Graves* that a motion for release which was unaccompanied by any other indication that the defendant desired a speedy trial should be given only minimal weight as an assertion of the right. 490 A.2d at 1099. Likewise, we accord a motion to dismiss for failure timely to transmit the record minimal weight when it is unaccompanied by a request manifesting an interest in expedition rather than dismissal. We also pointed out in *Graves, id.,* at 1101, that part of the responsibility for expediting an appeal falls on the defendant:[8]

> We expect a defendant who is genuinely interested in a prompt trial to be more active during this critical stage of the proceedings. While [Rule 4–III(a)] imposes the primary obligation on the government to expedite the appeal, it certainly does not prevent a defendant from making inquiries about, for example, the preparation of the record on ap-

---

**8.** The defendant's responsibility to help expedite an appeal is such that his failure to do so "diminishes somewhat the weight of this delay, although not enough to remove it from the category of significant delay." *Graves, supra,* 490 A.2d at 1097. (*See supra* discussion of reason for the delay.)

peal. A simple letter might have prevented several months of delay. Accordingly, appellant's apparent failure to take any such steps diminishes the force of his claim that he sought an early trial.

The rule that defendant's assertion of the right is one factor to be considered allows the court "to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection." *Barker, supra,* 407 U.S. at 529, 92 S.Ct. at 2191. In the instant case, three and a half years passed between appellant's mistrial and trial. During that entire time, appellant only moved once to dismiss an appeal for failure to transmit the record, and once to dismiss the indictment for lack of a speedy trial, stating in a footnote that he desired a speedy trial. The force of appellant's objection on appeal is diminished by his failures to move that the record be transmitted immediately and to take other steps to insure that the appeal move forward expeditiously. Moreover, the appellate posture of the case does not excuse his failure to move for a speedy trial during the eleven months of proceedings on remand.[9] Although we recognize that as time passes other events will intrude into a defendant's life which may require a defense request for a continuance, appellant failed to indicate expressly that he remained interested in a speedy trial. *See Graves, supra,* 490 A.2d at 1098 (Graves "nowhere declared that he wanted to be tried immediately, or as soon as reasonably possible."). Accordingly, we conclude that appellant's manner of asserting his right does not add much force to his speedy trial claim.

### Prejudice to the Defendant

"A defendant need not affirmatively show prejudice in order to prevail on a speedy trial claim, and when—as here—the

defendant's claim has *prima facie* merit, the government must make a showing which 'convincingly outweighs' a defendant's assertion of prejudice." *Parks, supra,* 451 A.2d at 602 (citations omitted). Prejudice is to be evaluated in light of the interests protected by the speedy trial right: avoiding oppressive time in jail before trial; minimizing the anxiety and concern of the defendant; and the most serious problem—limiting impairment of the defense. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193; *Graves, supra,* 490 A.2d at 1101. Appellant was never incarcerated before the second trial, so that type of prejudice is not present here.

The trial judge found that appellant made a very strong showing of personal prejudice. This factual finding is supported by substantial evidence in the record, and we are therefore bound by it since it is not clearly erroneous. *Graves, supra,* 490 A.2d at 1091. In an affidavit, appellant stated that before this case arose his nine-year record with the police department was spotless. Because of stress arising from this case he applied for and was granted sick leave, was eventually suspended indefinitely without pay, and has not been able to find another job which pays as much or provides the same personal satisfaction as being a police officer. He also stated that he began to drink heavily, took tranquilizers, saw a psychiatrist until he could no longer afford it, began to have problems in his relationship with his wife, and was denied the chance to adopt a child because of the pending charges.

In *Graves* we deemed specific circumstances relevant to a showing of personal anxiety. 490 A.2d at 1104. Thus, unlike the defendant in *Graves*, appellant is a family man, employed, had no previous involvement as a defendant with the criminal

---

9. Seven months after the remand by this court, appellant moved to continue the suppression hearing, and waived "any speedy trial demand," because his mother was terminally ill and he could not attend the hearing because he had returned to the family home in Cumberland, Maryland. The government objected to the continuance since the issue presented only a legal question and since the community also has an interest in a speedy trial. An eleven-day continuance was agreed to by appellant's counsel. Since the delay granted here was only eleven days, this incident does not weigh heavily in the calculus. In addition, it should be noted that appellant had a right to be at the motions hearing even though it involved a question of law only, and the reason for the postponement was quite a strong one.

justice system, was in good health, and his personal and business affairs were in good order before he was indicted. All of these circumstances changed for the worse between the time of appellant's indictment and second trial. Appellant's assertions in his affidavit were uncontroverted. Furthermore, although appellant was not incarcerated at any time prior to his second trial, he suffered many of the same effects which we viewed as following from pretrial incarceration for a substantial period. *Id.,* at 1105 (25 months) (citations omitted). Although a more vigorous assertion of his right to a speedy trial would have added further weight to appellant's claim of personal prejudice, *see id.,* at 1103, he has nonetheless made a very strong showing.

The final question is whether appellant was impaired in the preparation of his defense as a result of the delay. Appellant contends that he lost a key witness as a result of the delay of his trial. In an affidavit attached to appellant's speedy trial motion, defense counsel stated that Tefera Bekele would have testified at the first trial in 1981 that he was a parking garage attendant and did not see a police car enter the garage at the time appellant and Frontuto allegedly were there while the sodomy occurred. Another affidavit by a defense investigator stated that he had been unable to locate Mr. Bekele in time for the second trial in 1985. Although the government disputes the importance of this witness, and we share some of these doubts, in view of the fact that the government's case pitted the credibility of Frontuto against that of appellant, any credible evidence from another source which tended to corroborate one side or the other was not insignificant.

Nonetheless, appellant had a duty to keep in touch with his witness to avoid precisely this problem. In *Smith v. United States,* 379 A.2d 1166, 1167 (D.C.1977), we held:

> The value of appellant's witness was known to him immediately, and appellant could have taken steps to preserve this witness' memory. ... Appellant may not predicate prejudice upon his own failure to enlist the aid of a witness until his memory has faded.

Similarly a criminal defendant at least has a minimal responsibility to keep in touch with an important defense witness during the delay before trial. Nothing in the record indicates that at the time of the mistrial appellant or his attorney asked Mr. Bekele to notify appellant of any future address changes. Nor does appellant offer any explanation of why he or defense counsel failed to take any steps to preserve Mr. Bekele's testimony. Consequently, although appellant has demonstrated prejudice to his defense since Mr. Bekele was available to testify at the first trial, his showing is not as strong as it would have been had he taken steps to avoid the loss of this witness.

### The Balance

■ Applying the *Barker* test, we begin with the proposition that after one year the government has the burden to demonstrate that appellant's right to a speedy trial was not violated. All except twelve of the fifty-one months of delay were due to institutional factors which are properly classified as either neutral or, under *Loud Hawk,* justifiable delay; appellant failed explicitly to seek expedition of the interlocutory appeals, and while initially asserting his right to a speedy trial at an early time, he did not renew his request for a speedy trial during the remand proceedings following the first appeal or until three months had elapsed following the remand after the second appeal; appellant was never incarcerated; and appellant's claim of prejudice to his defense is weakened by his failure to keep in touch with a witness. On the other hand, the fifty-one months of delay was very long for a simple case; twelve months of that time was unnecessary appellate delay caused by the government's failure to comply with the rules of this court notwithstanding our opinion in *Day, supra,* 390 A.2d at 968, and counts as significant delay against the government; appellant indicated at the earliest possible moment, following his indictment, that he wanted a speedy trial, persisted in that view at least until the mistrial, arguably continued to express that desire in filing a motion to

dismiss the government's first appeal for failure timely to file the record, and explicitly expressed his desire for a speedy trial when the case was again in a posture to proceed to trial; and appellant suffered severe personal anxiety and demonstrated possible prejudice to his defense.

There is no suggestion that appellant directly acted at any time in a manner contrary to the expedition of his trial. He did not file frivolous motions[10] and his principal requests for postponements were due to matters beyond his control: his attorneys' representation of another client and his mother's terminal illness. His assertion of the right to a speedy trial was explicit, unlike that of the defendant in *Graves*. On the other hand, this case is unusual because there were two interlocutory appeals. Neither appeal, and appellant does not contend otherwise, was unjustified or taken in bad faith.[11] At the same time the government, being on notice of this court's view of appellate delay in assessing a defendant's claim of denial of a right to a speedy trial, nevertheless neglected (viewing the government's inaction most favorably to it) its duty to comply with the rules of this court.

In *Graves, supra,* we stated that the circumstances in that case approached "the boundary between delay which offends the Constitution and that which does not." 490 A.2d at 1105. There was a twenty-five month lapse between Graves' arrest and trial, the government failed to expedite an interlocutory appeal, which it withdrew six months later, and Graves, who was incarcerated throughout this period, repeatedly sought dismissal of the charges on speedy trial grounds. The en banc court found significant that the bulk of delay was due to neutral institutional factors and that Graves had not sought to expedite the appeal or demand a speedy trial, and had shown no impairment of his ability to defend or personal prejudice. We also readily acknowledge that the *Barker* factors

have "no 'talismanic' qualities." *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193. Applying those factors here, we conclude that the *Graves* boundary has been passed. Fifty-one months delay in a simple case is extreme delay. The government has not offered an explanation for its failure to expedite two interlocutory appeals, which added an extra year of unnecessary delay to an already lengthy period of delay. The time deemed to weigh significantly against the government because of its non-expedition was four and one-half months in *Graves,* and twelve months here. Appellant asserted his right to a speedy trial (as distinct from seeking dismissal of the charges) at the earliest possible moment, and has demonstrated severe personal prejudice as well as possible prejudice to his defense. The government, which has the burden, has failed to show "convincingly," as it must, *Parks, supra,* 451 A.2d at 602, that appellant has not been prejudiced by the delay.

Accordingly, the judgment of conviction is reversed and the case remanded to the trial court for dismissal of the indictment.

**10.** *Compare Loud Hawk, supra,* 106 S.Ct. at 656 (defendants filed frivolous petitions for rehearing and certiorari and repetitive and unsuccessful motions in the trial court).

**11.** *Compare Graves, supra,* where the appeal was not justified and the government eventually withdrew it. 490 A.2d at 1096–97.