789 P.2d 588

Vincent ZURLA, a/k/a Vincent James Zurla, a/k/a Henry Vialpando, a/k/a Harry Vialpando, a/k/a David Vincent Serna, Petitioner,

v.

STATE of New Mexico, Respondent.

No. 18348.

Supreme Court of New Mexico.

Jan. 25, 1990.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for respondent.

Jacquelyn Robins, Chief Public Defender Wade H. Russell, Asst. Appellate Defender, Santa Fe, for petitioner.

## OPINION

RANSOM, Justice.

Vincent Zurla was arrested on a shoplifting charge while on parole for a prior conviction. Nineteen months later his case came to trial, and he was convicted on one count of shoplifting over $100. He appealed to the court of appeals, arguing *inter alia* that his sixth amendment right to a speedy trial had been violated. The court of appeals affirmed the conviction. We granted certiorari and reverse.

Zurla was arrested on December 14, 1985. The following day, he posted a $2,500 bond and was released. On December 16, he was arraigned in metropolitan court. On January 24 or 25, 1986, Zurla's parole was revoked because of the pending charges against him and because he had consumed intoxicating beverages, also in violation of his parole. Between January 27, 1986, and May 22, 1987, Zurla was in the custody of the Department of Corrections on his parole violation. Shortly after returning to prison and with the help of a paralegal at the Department of Corrections, Zurla filed (apparently in metropolitan court) a pro se motion to have his trial set within six months, pursuant to SCRA 1986, 5–604. Zurla testified that the motion listed as his address the Department of Corrections' facility in Los Lunas.

Zurla was indicted in district court on August 26, 1986. The district court was unaware that Zurla was being held in custody for a parole violation and issued a bench warrant for his arrest. Although Zurla's bond was transferred from metropolitan court to district court on September 19, 1986, the bench warrant for Zurla's arrest was not cancelled until the day after he was arraigned in district court. Zurla was not arraigned until March 2, 1987, after the Department of Corrections notified the district court that it was holding him. It was at this time that Zurla first discussed the charges against him with an attorney.

A trial date first was set on a trailing docket for April 27, 1987, but was reset for May 15, 1987. Seventeen months lapsed between Zurla's arrest and the May 15 trial date. This date was continued at defendant's request until July 16, 1987. On July 9, Zurla moved to dismiss the charges for failure to afford a speedy trial as provided in the New Mexico and United States Constitutions.

Evidence was adduced before the trial court that the district attorney's office could have located Zurla simply by placing a phone call to the Department of Corrections' Central Records Office, but apparently this phone call never was made. Moreover, district court employees testified that, unless notified by the district attorney who presents a case to the grand jury, a district court judge often has no way of knowing whether a defendant is being held in custody or has been released on bond when deciding whether to issue a bench warrant or to send notice of arraignment to the defendant.

Zurla also claimed that two potentially exculpatory witnesses had left New Mexico subsequent to his arrest and now could not be located. According to testimony by Zurla and his wife, a neighbor and another woman whom they did not know were waiting in their car in the parking lot of the store when Zurla was arrested by a store security guard. According to Mrs. Zurla's testimony, these witnesses were in the car when, prior to her husband's arrest, she came back to the car in order to get her purse to pay for the goods. Mrs. Zurla also testified, however, that the car was parked some distance from the entrance to the store and was too far away for these witnesses to have seen Zurla's arrest. Thus, it is unlikely that they could have

corroborated the testimony by Mrs. Zurla and her husband that he was apprehended inside the store and had not intended to steal anything. The motion to dismiss was denied on July 16 and Zurla proceeded to trial.

*Nature of speedy trial right.* The Supreme Court has declared the sixth amendment right to a speedy trial to be a fundamental constitutional right that applies to the states through the fourteenth amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth a four-prong test as a guide to the determination of speedy trial claims: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2191; *see also State v. Kilpatrick,* 104 N.M. 441, 722 P.2d 692 (Ct.App.), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986), *on remand from Kilpatrick v. State,* 103 N.M. 52, 702 P.2d 997 (1985).

These four factors, however, have no talismanic qualities; no one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193, *see also Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (prejudice not essential to showing deprivation of speedy trial right). In applying this test, "courts must * * * engage in a difficult and sensitive balancing process * * * carried out with full recognition that the accused's interest in a speedy trial is * * * specifically affirmed in the Constitution." *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193

In its memorandum opinion,[1] the court of appeals held that the first three *Barker v. Wingo* factors, i.e., the length of delay, the reason for the delay, and the defendant's assertion of his right, all weighed in favor

of Zurla, but not heavily in his favor. The court also held that Zurla failed to show prejudice and on balance had failed to show that his speedy trial rights were violated.

We disagree. We believe the court of appeals incorrectly weighed the first three *Barker v. Wingo* factors too lightly in favor of the defendant and incorrectly concluded the state had prevailed on the prejudice prong of the analysis. As the court of appeals did on direct appeal, we now independently balance the factors considered by the trial court in deciding whether a speedy trial violation has taken place. *See United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), *on remand,* 784 F.2d 1407 (9th Cir.1986); *State v. Grissom,* 106 N.M. 555, 746 P.2d 661 (Ct.App.1987).

■ *Length of delay.* We note first our agreement with the court of appeals that the seventeen-month delay between arrest and the first trial date in a case as simple as this one was presumptively prejudicial and triggers inquiry into the remaining three factors. *See Grissom,* 106 N.M. at 561–62, 746 P.2d at 667–68 (delay totaling sixteen months that was attributable to state in complex conspiracy and racketeering case sufficient to trigger speedy trial analysis); *State v. Kilpatrick,* 104 N.M. at 444, 722 P.2d at 695 (delay of fifteen months in a simple assault case presumptively prejudicial).

However, we disagree with the court of appeals as to the weight to be given this factor. "[D]elay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192. Given the sixteen-month period of time found presumptively prejudicial in *Grissom,* we weigh the seventeen-month delay in this simple shoplifting case somewhat heavily against the state.

---

1. The court of appeals first assigned Zurla's case to the summary calendar. Upon motion from the Public Defender's Department, the court reassigned the case to the general calendar and, in December 1987, affirmed Zurla's conviction in a memorandum opinion. Upon motion for rehearing, the court issued a second, formal opinion in December 1988, which also affirmed the conviction. After a second motion for rehearing, the court again withdrew its opinion and filed a third, memorandum opinion on March 14, 1989. This third opinion is the opinion on which we directed a writ of certiorari to the court of appeals.

Moreover, we note that the state's chief evidence against Zurla was the testimony of the security guard who alleged he apprehended Zurla attempting to leave the store without paying for merchandise, and that this testimony was available to the state from the day of Zurla's arrest. *See United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir.1970) (absent good reason, delay of nine months overly long in case depending on eyewitness testimony), *appeal after remand*, 434 F.2d 243 (1st Cir. 1970), *cert. denied*, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971). *Butler* was cited with approval in *Barker v. Wingo*, 407 U.S. at 531, n. 31, 92 S.Ct. at 2192, n. 31, as an example of a set of circumstances in which courts should tolerate less delay.

*Reason for the delay.* The court of appeals found the state simply was negligent in failing to locate Zurla and, therefore, did not weigh this factor heavily against the state. We disagree with this result. While *Barker v. Wingo* termed negligent delay a "more neutral reason" that, along with excessive caseload, weighed "less heavily" against the state than intentional delay, 407 U.S. at 531, 92 S.Ct. at 2192, simply denominating the reason advanced by the state as "negligent delay" is not sufficient to fix the weight to be given to this consideration. *See Graves v. United States*, 490 A.2d 1086, 1092 (D.C.App.1984) (en banc) (recognizing an intermediate category of delay for government actions, including failure to take reasonable means to bring a case to trial, that are deemed more culpable than delay due to court congestion and less culpable than tactical delay), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 *rec'd as overruled in part on other*

*grounds*, *Sell v. United States*, 525 A.2d 1017 (D.C.App.1987) (*Loud Hawk* mandates reasonable delay to pursue appeal be treated as justifiable delay); *Taylor v. State*, 429 So.2d 1172, 1174 (Ala.Crim.App.) (while state's negligence in bringing defendant to trial did not necessarily tip scales in favor of defendant, sheer bureaucratic indifference weighs heavily against state), *cert. denied*, 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983). In weighing this factor we stress two principles from *Barker v. Wingo:* (1) the four factors are interrelated and must be evaluated in light of the particular circumstances of the case, 407 U.S. at 533, 92 S.Ct. at 2193; and (2) in evaluating speedy trial claims we should compare the conduct of the state and the defendant. 407 U.S. at 530, 92 S.Ct. at 2191.

Here, the extent to which the state's negligence weighs against it is increased by the length of time during which no attempt was made to locate Zurla and by his early, pro se assertion of his right to a speedy trial. The state failed to inquire as to Zurla's whereabouts despite being put on notice that he was demanding his right to a speedy trial, despite notice of his whereabouts, and despite the simple nature of the charges against him.[2] This demonstrates an unacceptable indifference by the prosecution to its constitutional duty "to make a diligent, good-faith effort to bring a defendant to trial." *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969); *see also State v. Harvey*, 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973). "[W]here the [administrative] machinery exists [to secure a defendant's presence at trial], the prosecutor has a constitutional

---

**2.** At the district court hearing on Zurla's speedy trial motion, the district attorney took the position that, as the state had no actual knowledge of Zurla's whereabouts, the delay in bringing him to trial did not constitute an "irregularity." The state, however, had the responsibility to manage its case against Zurla in a manner that allowed it to fulfill its constitutional obligation to bring him to trial within a reasonable time. *See Barker v. Wingo*, 407 U.S. at 529, 92 S.Ct. at 2191. The district attorney was chargeable with constructive knowledge of what a reasonable discharge of those case-management responsibilities would have revealed, e.g., the contents of

the preindictment metropolitan court file on Zurla's case (including his motion for a speedy trial) and the revocation of his parole. Moreover, the failure of the district attorney's office to alert the district court that Zurla was in custody appears from the record to have created much of the bureaucratic confusion in this case, in which a bench warrant was issued on a defendant who in fact had posted bond and then in fact was in the custody of the Department of Corrections. Had the court properly been informed of Zurla's whereabouts, he could have been arraigned promptly on the pending charges.

duty to attempt to use it." *Id.* at 217, 510 P.2d at 1088.

We believe that bureaucratic indifference should weigh more heavily against the state than simple case overload, particularly when the defendant has attempted to safeguard his rights. *See Commonwealth v. Lutoff,* 14 Mass.App. 434, 440 N.E.2d 52 (1982) (preoccupation with other cases as reason for delay weighs quite heavily against state in case in which defendant made early and persistent efforts to obtain speedy trial).

As pointed out by Judge Chavez' dissent from the court of appeals opinion in this case, previous New Mexico precedent also supports our conclusion that the reason for the delay in bringing Zurla to trial should weigh heavily in his favor. In *Harvey,* the court held that the failure, despite the availability of the necessary administrative machinery, to seek extradition of the defendant from California where he was imprisoned on an unrelated charge weighed heavily against the state. *See also Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). We believe failure to make an effort to locate a defendant who is imprisoned in the state's own corrections facilities and who has attempted while in prison to obtain an early confrontation with his accusers also must weigh heavily against the state. The court in *Raburn v. Nash,* 78 N.M. 385, 387, 431 P.2d 874, 876, *cert. dismissed,* 389 U.S. 999, 88 S.Ct. 582, 19 L.Ed.2d 613 (1967) noted:

> A prisoner does not forfeit his right to a speedy trial solely because he is confined in the penitentiary under sentence for another offense * * * * This is particularly true when the state that holds him in prison is the same state that presents the indictments.

(Citations omitted).

*Assertion of the right.* As discussed above, Zurla made a pro se motion to be tried within six months, pursuant to SCRA 1986, 5–604, shortly after his parole was revoked and he was placed into custody by the Department of Corrections. Before his trial in 1987, Zurla's attorney made a motion to dismiss the charges against him for failure to afford a speedy trial.

A defendant does not have a duty to bring himself to trial, and a speedy trial violation may be found even when the defendant has not asserted the right. *Barker v. Wingo,* 407 U.S. at 527–28, 92 S.Ct. at 2190–91. Nevertheless, the assertion of the right is entitled to strong evidentiary weight in deciding whether a speedy trial violation has taken place. *Id.* at 531–32, 92 S.Ct. at 2192. Under the circumstances described above, we believe this factor weighs substantially in Zurla's favor. An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution. The strength of a defendant's assertions of the right (i.e., early and/or frequent) also indicates the probable extent to which the defendant has suffered from the inevitable burdens that fall upon the target of a criminal prosecution, burdens the speedy trial right was intended to minimize. *Id.* at 531, 92 S.Ct. at 2192.

*Prejudice to the defendant—General considerations. Barker v. Wingo* identified three different types of prejudice to the defendant that the sixth amendment right to a speedy trial was intended to minimize or prevent: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility of impairment to the defense. 407 U.S. at 532, 92 S.Ct. at 2193. Of these, the Supreme Court believed impairment of the defense to be the most serious prejudice, because it "skews the fairness of the entire system." *Id.*

The court of appeals held that Zurla failed to demonstrate any of these elements of prejudice. The court held that he had not been subjected to oppressive pretrial incarceration. Zurla was released on bond the day after his arrest. Unlike the defendant in *State v. Kilpatrick,* who lived under restrictions on his liberty imposed along with a $2,500 bond the entire time the charges were pending against him, Zurla lived under similar restrictions only a

short time prior to the revocation of his parole, albeit the bond itself appears to have remained in effect while he was in the custody of the Department of Corrections. *Cf. State v. Kilpatrick,* 104 N.M. at 445–46, 722 P.2d at 696–97. Moreover, the court noted, Zurla was subject to revocation of his parole regardless of how the charges pending against him were resolved. Further, the court held, loss of the *possibility* of serving concurrent sentences did not constitute an aspect of prejudice because Zurla did not have a *"right* to being sentenced" to serve concurrent terms, citing *State v. Tarango,* 105 N.M. 592, 734 P.2d 1275 (Ct.App.), *cert. denied,* 105 N.M. 521, 734 P.2d 761 (1987), and *State v. Powers,* 97 N.M. 32, 636 P.2d 303 (Ct.App.1981). Finally, the court held, Zurla failed to demonstrate impairment to his defense because the evidence, at best, was conflicting as to whether these witnesses did see the events giving rise to his arrest, and because he failed to make a showing of his attempts to locate these witnesses.

▪ We disagree that Zurla did not suffer oppressive pretrial incarceration and that his defense was not impaired, although we conclude that the degree of prejudice under the facts was minimal.

*—Oppressive pretrial incarceration.* We believe loss of the possibility of serving concurrent sentences did constitute an aspect of prejudice.[3] In *Smith v. Hooey,* the Supreme Court noted that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." 393 U.S. at 378, 89 S.Ct. at 577. Loss of this possibility is therefore to be considered an element of oppressive pretrial incarceration. *Id.*

Citing *Smith v. Hooey,* Judge Lopez wrote in *Harvey* that, although not weighing heavily in the defendant's favor, loss of the possibility of concurrent sentencing "denied [the defendant] the *opportunity* to

sever a substantial portion of his New Mexico sentence [and this] is enough to prejudice him." 85 N.M. at 218, 510 P.2d at 1089 (emphasis in the original); *see also Taylor v. State,* 429 So.2d 1172 (Ala.Crim. App.), *cert. denied,* 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983); *State v. Holmes,* 643 S.W.2d 282 (Mo.App.1982). Although concurring in the result of Judge Lopez' opinion, the two other members of the *Harvey* panel did not concur in Judge Lopez' discussion of prejudice, concluding that "the three factors of length of delay, reason for delay and defendant's assertion of his right ... clearly outweigh the State's equivocal showing that defendant was not prejudiced...." 85 N.M. at 219, 510 P.2d at 1090.

We note that the opinions in *Powers* and *Tarango,* cited by the court of appeals in this case, failed to cite *Smith v. Hooey* or mention the court's apparent disagreement over this issue in *Harvey.* To the extent these cases suggest a rule different from that in *Smith v. Hooey,* these cases are overruled. We hold that loss of the possibility of concurrent sentencing constitutes an aspect of prejudice as defined under the sixth amendment.

▪ *—Impairment of the defense.* We also disagree with the court of appeals' analysis of and conclusion on the issue of impairment of the defense. Citing *State v. Tartaglia,* 108 N.M. 411, 773 P.2d 356 (Ct. App.), *cert. denied,* 108 N.M. 318, 772 P.2d 352 (1989), the court held that Zurla had the burden of proving his speedy trial rights were violated and failed to establish the existence of any prejudice. Arguably, *Tartaglia* may be read to hold either that the defendant bears "the burden of proof" to show prejudice, or that he bears simply "the burden of producing evidence," and not the burden of persuasion, as suggested by the court of appeals. "Since defendant claims his sixth amendment rights have been violated, *he should bear the burden of producing evidence to support his*

---

**3.** We note that, while the court held incarceration on a parole revocation did not amount to prejudice, the court failed to address whether Zurla's liberty interests nevertheless were impaired during this period because of the $2,500 bond. We find, however, little if any additional impairment to these interests under the circumstances.

claim." *Tartaglia,* 108 N.M. at 414, 773 P.2d at 359 (emphasis added); *see generally Mortgage Inv. Co. of El Paso v. Griego,* 108 N.M. 240, 771 P.2d 173 (1989) (on distinction between burden of production and burden of persuasion).

The reason advanced in *Tartaglia* for placing the burden of production on the defendant with respect to the prejudice prong of the speedy trial analysis was that

it is difficult to conceive of how the state could come forward and effectively rebut a presumption of prejudice * * * without knowing * * * how defendant claims he was prejudiced. For example, how could the state rebut a claim that a potential exculpatory witness has disappeared * * * when the state may be unaware of the existence of such a person?

108 N.M. at 415, 773 P.2d at 360. For similar reasons, the state was held to bear the burden of advancing reasons to justify any delay found to be presumptively prejudicial. *Id.* at 414, 773 P.2d at 359. *Tartaglia* also noted that the defendant did not have to establish "actual prejudice" as in a due process claim for preindictment delay; rather, he had to present specific corroboration of his allegations of prejudice. *Id.* at 416, 773 P.2d at 361; *cf. Smith v. Hooey,* 393 U.S. 374, 384, 89 S.Ct. 575, 580, 21 L.Ed.2d 607 (1969) (Harlan, J., separate opinion) (accused must establish prima facie showing of prejudice). *But cf. Dickey v. Florida,* 398 U.S. at 53–57, 90 S.Ct. at 1576–78 (Brennan, J., concurring) (consistent with other sixth amendment rights, once defendant has made prima facie case by showing government-caused delay beyond point at which a probability of prejudice arose, burden should shift to government to establish necessary delay or harmless error), *cited with approval in Barker v. Wingo,* 407 U.S. at 530, n. 30, 92 S.Ct. at 2191, n. 30.

Although the reasons discussed in *Tartaglia* for placing the burden of production on the defendant are cogent, this does not provide an appropriate basis to shift to the defendant the burden of persuasion. Once the defendant has demonstrated presump-

tively prejudicial delay and thus triggered the *Barker v. Wingo* analysis, the presumption of prejudice does not disappear. Rather, the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated. To the extent it suggests the state does not have this burden, *Tartaglia* is overruled. Of course, as the court pointed out in *State v. Ackley,* 201 Mont. 252, 258, 653 P.2d 851, 854 (1982), "The State's burden to show a lack of prejudice becomes considerably lighter in the absence of evidence of prejudice * * * *" *See also State v. Mascarenas,* 84 N.M. 153, 500 P.2d 438 (Ct.App.1972) (alternate holding that once defendant established presumptively prejudicial delay, state bore burden of showing absence of prejudice); *Graves v. United States,* 490 A.2d at 1091 (delay of more than a year creates presumption of prejudice and shifts burden to state to justify delay); *Smith v. United States,* 418 F.2d 1120 (D.C.Cir.) (one-year delay created rebuttable presumption of prejudice), *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969); *Smallwood v. State,* 51 Md.App. 463, 443 A.2d 1003 (1982) (in sixth amendment cases, prejudice may be presumed from delay, but, in preindictment delay cases, prejudice may not be presumed but must be proved).

We note this interpretation to be consistent with general principles regarding claims of prejudice to a criminal defendant's constitutional rights. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (when defendant raises reasonable possibility of constitutional error affecting verdict, presumption of prejudice arises that state must rebut beyond a reasonable doubt); *Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989) (same burden when error affects appeal). We believe to apply a different rule to speedy trial claims would place an inappropriate burden on a criminal defendant in a system that "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." *Barker v. Wingo,* 407 U.S. at 529, 92 S.Ct. at 2191.[4]

---

4. We do not decide in this case the weight of the

burden that the prosecution must meet. *Chap-*

We now apply these principles to Zurla's allegations that his defense was impaired by the loss of two witnesses. The state maintains the missing witnesses were not in a position to see Zurla's arrest by the store security guard, and, therefore, loss of their testimony did not impair the defense. However, even if they could not have testified as to whether Zurla's arrest took place inside or outside the store, according to Mrs. Zurla's testimony these witnesses were waiting in Zurla's car when, prior to her husband's arrest, she came back to the car to get her purse in order to pay for the goods her husband subsequently was accused of stealing. While their testimony was not conclusive on the question of Zurla's guilt or innocence, these witnesses could have corroborated Mrs. Zurla's story and helped to create a reasonable doubt whether Zurla intended to shoplift. The state's argument fails to rebut this possibility.

Nonetheless, the only evidence adduced at Zurla's hearing bearing on whether an attempt had been made to locate the witnesses was the testimony that one witness had moved to California, along with Mrs. Zurla's testimony that she could not get in touch with either witness. Zurla, the state argues, has failed to make an affirmative showing that his inability to locate the witnesses was attributable to the delay in bringing his case to trial. *See Grissom*, 106 N.M. at 563, 746 P.2d at 669 (evidence destroyed before delay became inordinate does not establish impairment of defense); *cf. State v. Evans*, 19 Or.App. 345, 527 P.2d 731 (1974), *cert. denied*, 423 U.S. 843, 96 S.Ct. 77, 46 L.Ed.2d 63 (1975) (prejudice not found when defendant made no efforts to obtain lost evidence to defend himself).

As we have noted, absent such corroborating evidence, "[t]he State's burden to show a lack of prejudice becomes considerably lighter * * * *" *Ackley*, 201 Mont. at 258, 653 P.2d at 854. By implication, even when the state does not carry completely its burden of persuasion to show an absence of prejudice, the extent to which the defendant can be said to have prevailed on this issue lessens substantially in the absence of corroborating evidence. *See State v. Holtslander*, 102 Idaho 306, 629 P.2d 702, 709 (1981) (presumption of prejudice entitled to little weight when defendant has neither alleged nor produced evidence of prejudice). The evidence Zurla adduced at

*man* held that, generally, if the prosecution can prove *beyond a reasonable doubt* that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand. 386 U.S. at 24, 87 S.Ct. at 828. *Manlove* applied the same standard to the question of whether an alteration of the record deprived the petitioner of his right to an appeal. 108 N.M. at 477, 775 P.2d at 243. The Supreme Court also has applied the *Chapman* burden in some sixth amendment contexts. *See Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (psychological evaluation of future dangerousness obtained in violation of right to counsel in capital murder case).

In other cases, when the alleged constitutional violation did not implicate the reliability of the judicial process, the Court has applied a *preponderance of the evidence* standard. *See, e.g., Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (admissibility of evidence alleged to be fruits of an illegally obtained confession); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (fourth amendment suppression hearings); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (hearings on whether confession was voluntary). In *Lego*, for example, the Court

noted that involuntary confessions often are reliable. 404 U.S. at 485–86, 92 S.Ct. at 624–25. Moreover, the Court noted, regardless of the trial court's determination of admissibility, the jury still has before it evidence of the circumstances surrounding the confession by means of which to determine the weight to be given to that confession. *Id.*

In considering these principles in the present context, we note the compound nature of the interests protected by the speedy trial right. Two of the subparts to the prejudice analysis—oppressive pretrial incarceration and the anxiety and concern of the accused—have little if anything to do with the reliability of the judicial process. The third variety of prejudice, however, is impairment of the defense. As discussed in the body of this opinion, impairment of the defense was seen as the most important type of prejudice by the Court in *Barker v. Wingo* because it "skews the fairness of the entire system." 407 U.S. at 532, 92 S.Ct. at 2192. Thus, a strong argument exists for applying the *Chapman* burden at least in the analysis of impairment of the defense. We do not decide this question, however, because we conclude that the state has failed to carry its burden of persuasion even under the lesser preponderance standard.

the hearing does not show clearly the extent of his efforts, if any, to locate the witnesses. Nor did he present evidence sufficient to show the existence of a causal relationship between the unjustified delay and the loss of these witnesses' testimony.

Yet, neither has the state shown how the evidence controverts the "presumption of prejudice" as applied to the loss of this testimony, which, as noted above, was facially material to Zurla's defense. Instead, the state rests on its argument that, absent additional evidence of attempts to locate these witnesses, there is no basis from which to conclude that Zurla's defense was impaired. We hold on balance that the state has failed to carry its burden of persuasion to show that Zurla's defense was not impaired. However, in the absence of corroborating evidence of attempts to locate the missing witnesses sufficient to establish whether or not the loss of their testimony was due to the unjustified delay, the issue of impairment to the defense weighs only slightly in Zurla's favor.

■ *Conclusion.* In reweighing the factors considered by the court of appeals, we conclude that Zurla's sixth amendment rights were violated by the seventeen-month delay in this case. The *Barker v. Wingo* factors of length of the delay, reason for the delay, and assertion of the right all weigh either substantially or heavily in Zurla's favor. Although we do not believe the loss of the possibility of concurrent sentences nor the loss of the two witnesses weighs heavily in Zurla's favor, these factors nevertheless constitute some degree of prejudice. We thus face a set of circumstances not unlike the one considered by the court in *Harvey,* in which three factors weighed heavily in favor of the defendant and the record on the issue of prejudice was "equivocal." 85 N.M. at 219, 510 P.2d at 1090. In balancing these factors we reach the same result as did the court there.

We believe that when the state unjustifiably has delayed a defendant's trial beyond a reasonable time, disregarding the defendant's demand for an early trial, undue emphasis should not be placed on whether the defendant is able to adduce evidence of identifiable prejudice. To hold otherwise would in effect attribute to this factor "talismanic qualities" antithetical to the understanding that animated *Barker v. Wingo.* 407 U.S. at 533, 92 S.Ct. at 2193. We find fully applicable to this case the principles articulated by Justices White and Brennan:

> [Prejudice is] inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty. It is also true that many defendants will believe that time is on their side and will prefer to suffer whatever disadvantages delay may entail. But, for those who desire an early trial, these personal factors should prevail if the only countervailing considerations offered by the State are those connected with crowded dockets and prosecutorial case loads. A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be prejudice to the defendant at trial. "[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *United States v. Marion, supra* [404 U.S. 307,] at 320 [92 S.Ct. 455, at 463, 30 L.Ed.2d 468 (1971)].

*Id.* at 537–38, 92 S.Ct. at 2195 (concurring opinion).

Based on the foregoing considerations, the opinion of the court of appeals is reversed, and we remand this case to the district court with instructions to set aside the judgment and sentence and dismiss the charges against the defendant.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.

BACA, J., dissents.

WILSON, J., not participating.

BACA, Justice (Dissenting).

I respectfully dissent from the majority opinion. I hereby adopt the court of appeals opinion (filed March 14, 1989) as my dissent.