791 P.2d 76

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Carlos TARTAGLIA,
Defendant–Appellee.**

No. 11751.

Court of Appeals of New Mexico.

April 12, 1990.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

CHAVEZ, Judge.

The state appeals the dismissal of the indictment against defendant on the ground that defendant's right to a speedy trial was violated. This case is here, after remand to the district court, to allow defendant to present evidence of prejudice. The third calendar notice proposed summary affirmance of the dismissal. The state has timely filed a memorandum in opposition to the proposal. Not being persuaded, we affirm.

The facts of this case are set out in *State v. Tartaglia*, 108 N.M. 411, 773 P.2d 356 (Ct.App.1989), *overruled in part, Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990). In analyzing a defendant's claim that his right to a speedy trial has been violated, we consider the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors are the length of the delay, the reason for the delay, the assertion of the right to a speedy trial, and the prejudice to defendant resulting from the delay. *Id.; see also Zurla v. State*. We weigh these factors independently on appeal, taking into account the particular facts and circumstances of the case. *State v. Grissom*, 106 N.M. 555, 746 P.2d 661 (Ct.App.1987). These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. *Barker v. Wingo; Zurla v. State*. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *Zurla v. State*. These factors have no talismanic qualities and we do not tally the factors favoring one party or the other. Rather, we must "engage in a difficult and sensitive balancing process" in which the conduct of both the prosecution and the defendant is weighed. *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193; *Zurla v. State*.

## LENGTH OF DELAY

Defendant claimed, and the state agreed, that the relevant time period was

twenty-four months from defendant's indictment until his arrest and arraignment. A two-year delay in a relatively simple drug case is presumptively prejudicial, thereby triggering an examination of the other factors. *See State v. Kilpatrick,* 104 N.M. 441, 722 P.2d 692 (Ct.App.1986). A twenty-four month delay in a simple drug case weighs somewhat heavily against the state. *Zurla v. State.* Although both the state and defendant agree that the length of delay was twenty-four months running from the date of the indictment to the date of the arraignment, it should be noted that the hearing on the speedy trial motion took place five months after the date of the arraignment. The length of the delay could arguably be twenty-nine months rather than the twenty-four months agreed to by the parties.

## REASON FOR THE DELAY

■ The reason for the delay is also undisputed. The district attorney's office did not know that defendant had been incarcerated on a probation revocation at the time of his indictment. Although the evidence does not show that the delay was intentional, the state is presumed to know a defendant's whereabouts when he is in its custody. *Raburn v. Nash,* 78 N.M. 385, 431 P.2d 874 (1967). Although the reason for the delay could be termed negligent rather than intentional, this is not sufficient to fix the weight to be given this consideration. *Zurla v. State.* The extent to which the state's negligence is weighed against it is increased by the length of time during which no attempt was made to locate defendant. Bureaucratic indifference rather than simple case overload will weigh more heavily against the state. *Id.* The reason for the delay will weigh heavily against the state, where the state fails to make an effort to locate a defendant who is imprisoned in its own corrections facilities.

## ASSERTION OF THE RIGHT

■ Defendant timely asserted his right by filing a motion to dismiss shortly after his arrest on the indictment. An early assertion of the speedy trial right weighs in defendant's favor.

## PREJUDICE

■ After the remand for an evidentiary hearing on prejudice to defendant resulting from the delay, the trial court found that defendant had suffered no prejudice. The issue here is whether the first three factors weigh so heavily in defendant's favor that, even though he has shown no prejudice, the indictment must be dismissed for violation of defendant's right to speedy trial. A showing of prejudice is not required in order for a defendant to be entitled to a dismissal. *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

The state argues, however, that the showing of prejudice or absence of prejudice should be weighed more heavily than the other factors. *See State v. Leslie,* 147 Ariz. 38, 708 P.2d 719 (1985) (In Banc); *Sheriff, Clark County v. Berman,* 99 Nev. 102, 659 P.2d 298 (1983). It is true that the prejudice factor focuses most directly on the goals of the speedy trial clause, and that prejudice can be the determining factor when the other factors do not weigh heavily in favor of defendant. *See United States v. Henry,* 615 F.2d 1223 (9th Cir. 1980). However, undue emphasis should not be placed on whether the defendant is able to produce evidence of identifiable prejudice. *Zurla v. State.* If the other three factors weigh heavily in defendant's favor, the fact that he cannot show prejudice is not dispositive.

Two years passed between the time of defendant's indictment and his arrest for possession of a controlled substance. During that time, defendant was in the state's custody serving time in the penitentiary on a parole violation. For two years, the state made no attempt to locate him. Almost immediately after he was arrested, defendant asserted his right to a speedy trial. We find that in this case the length of the delay, the reasons for the delay, and the timely assertion of the right weigh so heavily in defendant's favor that the dismissal for a speedy trial violation must be affirmed.

**804**

The dismissal of the indictment with prejudice is affirmed.

IT IS SO ORDERED.

ALARID, J., concurs.

HARTZ, J., dissents.

HARTZ, Judge (Dissenting).

I respectfully dissent.

Given the imprecision of the guidelines provided by the United States Supreme Court in determining whether the sixth amendment right to a speedy trial has been violated, one should not be surprised by the differences of opinion on the subject among appellate courts. Such differences of opinion have arisen in situations like the one before us, in which the following elements are present: (1) the state fails to locate the defendant, even though he is in a state correctional facility; (2) as a result, trial is delayed for a substantial period of time; but (3) the defendant has not established any prejudice, other than the elimination of the possibility of concurrent sentences. *Compare People v. Belcher*, 186 Ill.App.3d 202, 134 Ill.Dec. 240, 542 N.E.2d 419 (1989) (violation of right to speedy trial) *and Williams v. Darr*, 4 Kan.App.2d 178, 603 P.2d 1021 (1979) (same) *with McCutcheon v. Superior Court*, 150 Ariz. 312, 723 P.2d 661 (1986) (In Banc) (remand for determination of whether there was prejudice) *and Commonwealth v. Willis*, 21 Mass.App. 963, 488 N.E.2d 1193 (1986) (no violation).

Thus, one can hardly be overly confident about one's conclusions in this area of the law. Nevertheless, I believe that the holding of the majority fails to consider adequately the purposes of the constitutional right to a speedy trial. I would remand for further proceedings on the issue of prejudice.

In my view, the appropriate method of applying the balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) is to examine the four factors in light of the interests of the defendant protected by the right to a speedy trial. The less those interests have been prejudiced, the greater must be the state's indifference to those interests for there to be a violation of the constitutional right. *Cf. Commonwealth v. Willis*, 488 N.E.2d at 1194–95 (determine whether constitutional right has been violated by examining whether "(1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant.").

The state's indifference to the right can be assessed by examining the three factors of: (1) length of the delay, (2) reason for the delay, and (3) defendant's assertion of the right. (One should not forget, however, that these three factors may also be relevant in assessing the extent to which the defendant's interests have been prejudiced.) For example, a reason for delay may not seem too egregious until the delay is extensive. Failure to proceed due to a paper-work error is less justifiable as time goes on, because the state has a responsibility to review cases periodically to see whether they can be brought promptly to trial. During a review the error ordinarily should be corrected. Similarly, negligent delay becomes substantially less tolerable if it occurs after a defendant has declared a desire to proceed to trial.

The interests of defendants that are protected by the constitutional right have been described in various ways. The United States Supreme Court has identified the purposes of the right to a speedy trial as being "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). *Accord United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) noted a particular type of "oppressive incarceration" for a defendant already in prison on other charges while awaiting trial. Such a prisoner not only may lose the opportunity to serve sentences that are at least partially

concurrent, but also "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened * * * *" *Id.* at 378, 89 S.Ct. at 577.

Must the defendant suffer prejudice to those interests protected by the constitutional right in order to obtain dismissal of charges? *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) has been cited for the proposition that prejudice is not required for there to be a violation of the right to a speedy trial; but the holding of that case does not go so far. The Arizona Supreme Court had ruled that "a showing of prejudice to the defense at trial was essential to establish a federal speedy trial claim." *Id.* at 25, 94 S.Ct. at 189. The United States Supreme Court responded that "prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings." *Id.* at 26–27, 94 S.Ct. at 190 (footnote omitted). Moore was not tried until almost three years after he was charged and more than two years after he first demanded that the state of Arizona either drop the detainer against him or extradite him from California for trial. The Arizona charge might well have caused him to suffer in his California incarceration the type of oppression described in *Smith v. Hooey.* In addition, for more than two years before trial, Moore had made repeated demands to be tried. As stated in *Barker,* "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. A defendant may be hardpressed to prove the emotional stresses and other potential prejudice caused by delaying trial, but repeated demands for trial suggest the sincerity of such claims.

To understand the Supreme Court's attitude concerning whether prejudice must be present, it helps to turn to the seminal concurring opinion of Justice Brennan in *Dickey v. Florida,* 398 U.S. 30, 39, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970), in which he discusses prejudice at some length. He wrote:

Finally, what is the role of prejudice in speedy-trial determinations? The discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. Thus is it unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused.

*Id.* at 52, 90 S.Ct. at 1576. Justice Brennan continues, however, by noting that prejudice may be difficult to prove, even though it actually exists. Therefore, he suggests that when the delay is sufficiently long, "there arises a probability of substantial prejudice." *Id.* at 55, 90 S.Ct. at 1577. In other words, a defendant can prevail on a speedy-trial claim by relying on a presumption based on delay as a substitute for an evidentiary showing of prejudice. (Delay is not the only possible source of a presumption of prejudice. As already noted, a demand for speedy trial may itself imply prejudice, at least for the period postdating the demand. A presumption of prejudice may also arise when the defendant shows that the state intentionally delayed trial to gain a tactical advantage or to harass the defendant, because then the state's conduct itself indicates the strong probability of prejudice. *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (a showing of bad faith on the part of the police in failing to preserve evidence "indicate[s] that the evidence could form a basis for exonerating the defendant.").)

In light of Justice Brennan's analysis, the key language in *Moore* is that, *"Barker v. Wingo* expressly rejected the notion that *an affirmative demonstration of prejudice* was necessary to prove a denial of the constitutional right to a speedy trial." 414 U.S. at 26, 94 S.Ct. at 189–90 (emphasis added). A defendant who is unable to present evidence of prejudice can still obtain an order of dismissal if one could draw a rational inference from the circumstances of the case that the defendant probably suffered substantial prejudice from improp-

er delay in the proceedings. On the other hand, in the absence of evidence or a rational presumption of substantial prejudice, the court must deny a claim of constitutional deprivation. In particular, to consider a situation that may be present here, a defendant could not prevail under the following circumstances: (a) there is no evidence that the state intentionally delayed to gain a tactical advantage or to harass the defendant; (b) the delay plainly did not substantially reduce the likelihood of an acquittal; and (c) the unnecessary delay could not have caused material collateral consequences to defendant, such as anxiety and injury to reputation (because, for example, defendant was unaware of the charge and the charge was not publicized).

Turning to this case, the district court's finding of no prejudice to defendant would ordinarily preclude dismissal. The prejudice considered by the district court, however, appears to have been only prejudice to the defense at trial. Moreover, the finding of an absence of prejudice may refer only to the absence of an "affirmative showing" of prejudice; the district court may not have fully considered applicable presumptions on which a finding of prejudice might be based. In addition, during the prior hearing on remand in this case, the district court and the parties did not have the benefit of *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990), which overruled some of this court's statements in our earlier opinion ordering remand, to guide their presentations and analysis. Therefore, I would remand once again for a further evidentiary hearing, followed by the district court's weighing of the four *Barker* factors in light of *Zurla*.

Several additional observations may assist the district court on remand. With respect to the prosecution's conduct, one must not confuse the situation here with that in *Zurla*. Although, as the New Mexico Supreme Court stated in *Zurla*, "[B]ureaucratic indifference should weigh more heavily against the state than simple case overload," *id.* at 644, 789 P.2d at 592, the context of that indifference can be of determinative importance. In *Moore v. Arizona; Dickey v. Florida; Smith v. Hooey;* *Zurla v. State;* and *State v. Harvey*, 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973) the bureaucratic indifference was in response to a specific demand for trial by a defendant who was at the time of the demand incarcerated on other charges. In each of these cases the prosecution, despite the demand, made no effort during an extended period of time to bring the defendant to trial. As the United States Supreme Court has written, "Upon the petitioner's demand, [the state] had a constitutional duty to make a diligent, good-faith effort to bring him before the [county] court for trial." *Smith v. Hooey*, 393 U.S. at 383, 89 S.Ct. at 579. When the prosecutor had actual notice of the defendant's whereabouts and of the defendant's demand for a speedy trial, the prosecutor's inaction (even if not intentional) should weigh much more strongly against the state than in a case such as this, in which defendant's demand for speedy trial was made only two weeks before the date already set for trial. *See Zurla v. State*, 109 N.M. at 644, 789 P.2d at 592 (bureaucratic indifference is of particular weight "when the defendant has attempted to safeguard his rights"). Of course, the court cannot "hold against" defendant his failure to demand a speedy trial prior to his being on notice that the formal charge had been filed, but that is not what I am suggesting. The point is simply that failure by the prosecution to act is significantly more culpable when the prosecution has actual knowledge of the defendant's whereabouts and knowledge of the defendant's desire for a trial. These considerations distinguish this case from *Zurla*.

In evaluating prejudice, I would supplement *Zurla* with the following observations. First, defendant faces the obvious potential prejudice resulting from the inability of the court to sentence him to a term concurrent with the sentence that he was serving on another charge while trial was delayed in this case. The district court may have ignored this possibility because of this court's precedents, rejected by *Zurla*, suggesting that the loss of the opportunity for concurrent sentences should not be considered in weighing the *Barker* factors.

Nevertheless, the unavailability of concurrent sentencing is not necessarily prejudicial to defendant. The district court must look at the specifics of the case. For example, the district court may, in reviewing the nature of the alleged offense, conclude that a concurrent sentence would probably not have been imposed or, conversely, that incarceration for the alleged offense was unlikely. In either of those situations defendant lost little or nothing by the unavailability of concurrent sentences. Even if the district court thought that a concurrent sentence would have been likely, the court could adjust the sentence for the charged offense to reduce or eliminate the resulting prejudice to defendant. The district court could suspend a portion of the sentence or might even be able to reduce the sentence pursuant to NMSA 1978, Section 31–18–15.1 (Repl. Pamp.1987) (permitting reduction of basic sentence by up to one-third because of "mitigating * * * circumstances surrounding the offense"). All such possibilities must be considered in determining the extent of prejudice suffered by defendant from denial of the opportunity to have concurrent sentences. *See Commonwealth v. Willis*, 488 N.E.2d at 1196 n. 5.

Second, the district court must take care in applying two presumptions that could be used to evaluate the prejudice to defendant. As the Supreme Court stated in *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

> The strength of [defendant's] efforts [to assert his constitutional right] will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.

*Accord Zurla v. State*, 109 N.M. at 644, 789 P.2d at 592. In other words, although it may be difficult to evaluate such matters as the emotional burden on the defendant while awaiting trial and the problems that delay may cause to the defendant's preparation of his defense, the defendant's assertion of his right ordinarily is persuasive evidence that the defendant has calculated that the advantages of having a trial in the near future exceed the disadvantages. When the circumstances of an assertion imply that the defendant has calculated that the benefits of a prompt trial exceed the disadvantages, courts should presume prejudice to the defendant for the period of time after the defendant's demand for a trial. In *Zurla* the delay from the defendant's demand until the date initially set for trial was about fifteen months. In this case, in contrast, there is no basis for a presumption of prejudice, because the circumstances do not suggest any calculation by defendant of the advantages and disadvantages of a prompt trial. By the time defendant raised his speedy-trial claim, the date for trial had already been set.

The other presumption is that resulting from the delay itself. All else being equal, the longer the delay, the greater the chance of prejudice to the defendant. At some point one may even be able to conclude that the delay has been sufficiently long that the defendant probably suffered substantial prejudice. As already noted, Justice Brennan's concurrence in *Dickey* suggested the potential for this approach to evaluating prejudice.

Still, one precaution is necessary in adopting such a presumption. The delay of which Justice Brennan wrote is not the same as the delay necessary to trigger the *Barker* balancing test, even though the latter delay is termed "presumptively prejudicial." *Barker* states:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example,

the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge. [Footnote omitted.]

*Id.* at 530–31, 92 S.Ct. at 2192.

As the last quoted sentence suggests, a finding that a delay is sufficient to trigger the four-factor analysis is determined more by whether the prosecution should have been able to bring the case to trial within the pertinent time period than by whether it appears that such a delay is likely to have caused actual prejudice. Indeed, no empirical evidence or logic suggests that delay hampers the defense more in a simple case than in a complex case. On the contrary, in a complex case, subtle failures of memory and the disappearance of documents that may have been routinely destroyed may have a much greater impact on the defense than they would in a case of simple assault. Also, there is surely no reason to believe that the emotional stress on defendants is greater for simple cases than for complex ones. *Cf.* 2 W. LaFave & J. Israel, *Criminal Procedure* § 18.2(b), at 405 (1984) ("[I]t makes no sense to say that the more serious the charge the less likely prejudice will arise from a given passage of time."). The only reason why the length of delay triggering the *Barker* analysis should be shorter for simpler cases is that the state needs less time to prepare simpler cases.

Moreover, if "presumptive prejudice" meant "probable prejudice," then a court would not start to apply *Barker's* four-factor analysis until it had determined that the delay was sufficiently long that the defendant probably suffered substantial prejudice. Such a result would excessively limit the application of the right to a speedy trial. After all, a defendant may have actually suffered prejudice even though the existence of prejudice would not be a probable result of the delay in itself.

Thus, the "presumptively prejudicial" delay mentioned in *Barker* is apparently the equivalent of "unreasonable" delay. *See* 2 W. LaFave & J. Israel, *supra*, § 18.2(b). This interpretation produces the satisfactory result that the *Barker* analysis is triggered whenever the delay, given the nature of the case, is beyond the time that the prosecution should reasonably need to bring the case to trial. My impression is that courts have interpreted "presumptively prejudical" delay to mean just such a delay.

As a result, when courts are weighing the prejudice factor in applying *Barker*, they must not make too much of the "presumptive prejudice" to which they refer in determining when a delay triggers the *Barker* analysis. Although presumptively prejudicial delay may be a factor in the court's evaluation of prejudice, *see Zurla v. State*, 109 N.M. at 646, 789 P.2d at 594 ("the presumption of prejudice does not disappear"), the weight of that delay must turn on the specific facts of the case. For example, in this case the lengthy delay between the formal charge and defendant's arrest—although presumptively prejudicial—could not have caused emotional stress to defendant, since he had no knowledge of the charge during that period.

For the above reasons, I would remand to the district court for a supplemental hearing.