824 P.2d 332

**STATE of New Mexico,**
**Plaintiff–Appellant,**

v.

**Robert JOHNSON, Defendant–Appellee.**

No. 11852.

Court of Appeals of New Mexico.

Nov. 21, 1991.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Robert R. Cooper, Albuquerque, for defendant-appellee.

OPINION

ALARID, Chief Judge.

The state appeals the order of the district court dismissing the indictment against defendant on speedy trial grounds. We affirm the decision of the trial court.

## BACKGROUND

On September 30, 1986, defendant and his codefendant were arrested and charged with murder stemming from an incident that had occurred during the previous month. Defendant was released on his own recognizance after six and one-half hours of incarceration. This release included restrictions placed on defendant's liberty.

Defendant was subsequently indicted for manslaughter and aggravated battery on September 4, 1987. Defendant filed a motion to dismiss the charges on November 30, 1987. A hearing on this motion was held on February 3, 1988. The trial court dismissed the manslaughter charge but refused to dismiss the aggravated battery charge. At the hearing, defendant presented evidence to show that, due to the preindictment delay, he was suspended from his job, suffered stress and depression, and suffered marital difficulties and financial difficulties that affected his children. Defendant's motion to dismiss was later granted by a different judge who was subsequently assigned to the case. This appeal followed that decision.

## SPEEDY TRIAL

This case is related to the recent case of *State v. Garcia*, 110 N.M. 419, 796 P.2d 1115 (Ct.App.1990), in that the defendant in *Garcia* and this defendant were arrested at the same time for the same activity. Speedy trial analysis involves application of the balancing test in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under the *Barker* test, we consider four factors, namely, the length of the delay, the reason for the delay, defendant's assertion of his speedy trial right, and prejudice to the defendant caused by the delay.

For purposes of speedy trial analysis, the facts in *Garcia* relating to the first three factors in the *Barker* test are identical to the facts in this case. The delay in the instant case was over nineteen months and was presumptively prejudicial. *See Salandre v. State*, 111 N.M. 422, 806 P.2d 562 (1991). The reason for delay, as observed in *Garcia*, was attributable to further investigation of the case, inade-quate staffing, a busy trial schedule on the part of the prosecutor, and attempts of the prosecutor to meet with defense counsel to discuss a possible plea bargain. We weigh this factor against the state, but not heavily. Defendant asserted his right to a speedy trial by filing a motion to dismiss for delay on November 30, 1987. This factor is also weighed in favor of defendant, but not heavily. *See Work v. State*, 111 N.M. 145, 803 P.2d 234 (1990). In weighing the length of the delay, the reason for the delay, and the assertion of the right to a speedy trial, similar to the weighing of these factors by the court in *Garcia*, we determine that the first three factors should be balanced in defendant's favor, but not heavily. *See id.* 110 N.M. at 423–24, 796 P.2d at 1119–20.

However, in weighing the prejudice factor of the *Barker* test, we find that the balance tips substantially in favor of defendant. In reference to this factor, this court in *Garcia* stated that the defendant had shown minimal prejudice caused by the delay. The defendant in *Garcia* claimed that she had lost visitation time with her daughter and the esteem of her co-workers; that she had endured emotional suffering and lost weight; that she was unable to plan her future; and that she lived in fear. This showing was held to be not sufficiently different from the showing any criminal defendant could make to justify dismissal on speedy trial grounds. *Id.* *Garcia* concluded that the defendant's minimal showing of prejudice was insufficient to support her claim that the state had denied her the right to a speedy trial.

Many of the reasons cited by defendant to show prejudice fall in the same category as those claimed by the defendant in *Garcia*. However, unlike the result in *Garcia*, considering the problems suffered by defendant herein, which were similar to those suffered by the co-defendant, plus the suspensions of defendant from his employment, the problems attending such suspensions, and the psychological stress resulting therefrom, we are persuaded that defendant has established that he suffered substantial prejudice as a result of the de-

lay herein. *See, e.g., State v. Kilpatrick,* 104 N.M. 441, 722 P.2d 692 (Ct.App.1986) (defendant who suffered restrictions on his liberty and was impaired in his defense by loss of a witness satisfied the prejudice prong of the test for speedy trial violation). *See also State v. Lujan,* 112 N.M. 346, 815 P.2d 642 (Ct.App.1991). In the instant case, defendant was employed as a juvenile probation officer for the state. After his arrest, defendant was suspended without pay for two and one-half months and then reinstated to a position behind a desk. Upon reassignment to the desk job, defendant's employee benefits were different than those available to him prior to his arrest. During the initial suspension, defendant was forced to work on a part-time basis, creating financial difficulties for defendant and his family. Restrictions on defendant's travel prevented him from leaving the state, and as a result of the pending charges, defendant was required to seek help for psychological problems and marital difficulties, and he was suspended from his job on two occasions.

■ The state does not rebut defendant's claim of prejudice resulting from his suspensions. The state merely suggests that the anxiety described by defendant be given little weight. Defendant has the burden of production in showing that he was prejudiced by the delay, but the state has the burden of persuasion to show that defendant's right to a speedy trial was not violated. *See Zurla v. State,* 109 N.M. 640, 789 P.2d 588 (1990). The state has not met its burden in this case. Weighing each of the speedy trial factors, we determine defendant's right to a speedy trial was violated.

For the foregoing reasons, the decision of the trial court is affirmed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

HARTZ, Judge (Dissenting).

I would reverse the district court's ruling that Defendant's right to a speedy trial was violated.

The remedy for a violation of the constitutional right to a speedy trial is dismissal of the charges. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973). We should heed the warning that "overzealous application of this remedy [will] infringe 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error * * * *.'" *Barker v. Wingo,* 407 U.S. 514, 522 n. 16, 92 S.Ct. 2182, 2188 n. 16, 33 L.Ed.2d 101 (1972), quoting *United States v. Ewell,* 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966).

Defendant suffered no prejudice to his defense and no significant restraint on his liberty; he made no effort to seek a speedy resolution of the charges against him; and the sole cause of any improper delay was lack of prosecutorial resources. In these circumstances the delay here was not long enough to deprive the state of the right to try Defendant on the charge against him. The result reached by the majority is not compelled by controlling New Mexico precedent and ignores some of the central teachings of *Barker.*

To explain my views requires a more expansive summary of the facts and procedural posture of this case than the majority opinion provides. After summarizing the background, I will discuss the four factors set forth in *Barker* and what I believe is the proper analysis of the speedy trial claim.

## I. BACKGROUND

On August 9, 1986, Defendant and his Co-defendant, Bernice Johnson Garcia, had an altercation with Alfred H. Garcia. Mr. Garcia suffered a fractured leg. On September 28 Mr. Garcia died, perhaps as a result of his August injuries.

Two days later, Defendant and Co-defendant were arrested on warrants charging murder. Both were released on their own recognizance, with conditions. They were not indicted by a grand jury until September 4, 1987. The indictment charged them with voluntary manslaughter and aggravated battery inflicting great bodily harm.

On October 27 the court set trial for March 7, 1988. A month later, on November 30, Defendant and Co-defendant moved to dismiss the charges on the ground that they had been denied their right to a speedy trial. The court conducted a hearing on February 3, 1988. Judge James Blackmer orally granted the motion to dismiss the manslaughter charges but not the battery charges. The oral ruling was followed by a written order with findings and conclusions filed on May 25, 1988, the date trial began on the battery charges.

Co-defendant was convicted of aggravated battery with great bodily harm. The jury was unable to reach a verdict on the charge against Defendant. The state appealed the dismissal of the manslaughter charges. This court dismissed the appeal after the state failed to respond to our calendar notice proposing to dismiss the appeal on double-jeopardy grounds. On December 28, 1988, Judge Blackmer vacated his dismissal of the voluntary manslaughter charges. (Because of double-jeopardy concerns, Co-defendant has not been tried on the manslaughter charge.)

Thereafter, Judge Joe Castellano was assigned to the case. On Defendant's oral motion, Judge Castellano reconsidered Defendant's speedy-trial claim. He did not take any further testimony but relied on the record from the hearing before Judge Blackmer. On October 18, 1989, Judge Castellano entered an order dismissing the battery charge. (Although the state appears to assume that Judge Castellano also dismissed the manslaughter charge, the order specifically dismisses only Count III, the battery charge against Defendant.) On June 5, 1990, this court affirmed Co-defendant's battery conviction, denying her claim of violation of her right to a speedy trial.

*State v. Garcia,* 110 N.M. 419, 796 P.2d 1115 (Ct.App.1990).

## II. THE BARKER FACTORS

### A. *Length of the Delay*

The first question that must be resolved is whether the delay was sufficiently long to trigger review of a speedy trial claim. A delay that triggers review is termed "presumptively prejudicial." In *Salandre v. State,* 111 N.M. 422, 428, 806 P.2d 562, 568 (1991), the New Mexico Supreme Court held that a delay of less than nine months cannot be presumptively prejudicial. A nine-month delay is, however, presumptively prejudicial for cases, such as *Salandre* itself, which involve simple charges and readily-available evidence. *Id.* Delay of more than fifteen months is always presumptively prejudicial, no matter how complex the case. *Id.* n. 3. For cases of intermediate complexity, twelve months is presumptively prejudicial. *Id.*

This case appears to be more complex than *Salandre.* The circumstances of the victim's death are unusual. Also, there are apparently conflicting witness accounts of the incident. I believe that our supreme court would find this case to fit along the spectrum somewhere between the simple and the intermediate. Therefore, I conclude that delay in this case would be presumptively prejudicial if it exceeded ten months.

I would measure the delay in this case from (1) the time at which Defendant was arrested and restraints on his liberty imposed[1] to (2) the date of trial. *See id.* n. 4. That delay was almost twenty months, which is presumptively prejudicial. Therefore, the other factors set forth in *Barker* must be analyzed.

**1.** Because I find no violation of Defendant's right to a speedy trial, I need not consider whether the delay with respect to the aggravated battery charge should be measured from the date of the indictment on that specific charge rather than from the date of the previous arrest on an open charge of murder. *See United States v. Reme,* 738 F.2d 1156 (11th Cir.1984); *Commonwealth v. Gove,* 366 Mass. 351, 320 N.E.2d 900 (1974) (measure delay from date of indict-

ment for assault with deadly weapon and armed robbery, not from date of prior complaint for rape arising out of same incident); 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 18.1, at 400–01 (1984); 2 David S. Rudstein et al., *Criminal Constitutional Law* ¶ 11.01[1][b] at 11–5 to –6 (1990); *cf. McNeil v. Wisconsin,* ——— U.S. ———, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (sixth amendment right to counsel is offense-specific).

## B. *Reason for the Delay*

Defendant complains only of the pre-indictment delay. At the February 3, 1988, hearing before Judge Blackmer, the state accounted for that delay as follows: Assistant district attorney Kenneth Martinez was assigned the case when he began work in the office on December 1, 1986. At the same time, he was assigned numerous other murder and violent felony cases, including a jury trial set for that month. He reviewed the case and found that it included a significant issue as to the cause of the victim's death. He also noted conflicting accounts from the witnesses to the altercation. At some unspecified time in the next several weeks Martinez encountered Defendant's attorney, who told him that he had additional evidence that might dissuade the state from prosecuting the matter. They scheduled a meeting for February 24, 1987, to review defense counsel's evidence, but defense counsel was unable to keep the appointment. The following month Martinez had to spend most of his time in Taos trying a murder case. The two attorneys met on April 1. Martinez shared his file with defense counsel; defense counsel gave Martinez the names of two witnesses. In April and May, Martinez was busy preparing for trial and trying cases. In early June, Martinez tried two murder cases.

Realizing that his trial schedule was preventing him from working on this case, Martinez arranged to turn over the prosecution to Robert Schwartz, then director of the violent crimes division in the district attorney's office. Schwartz wrote the attorneys for Defendant and Co-defendant to ask if they had any information that would dissuade him from seeking an indictment. The indictment was returned on September 4, 1987.

In his formal findings after the February 3, 1988, hearing, Judge Blackmer stated:

> The State satisfactorily explained the delay in filing the charges between the 30 September 1986 arrest of the Defendants and the 4 September 1987 Indictment: they operated diligently, in good faith, without intent to damage or prejudice the Defendants' constitutional or other rights in the State's investigation and delay in charging the offenses in the Indictment.

Judge Castellano's order of October 18, 1989, stated only: "The reason for the delay offered by the state was a heavy caseload, a neutral reason that is weighed against the state * * * * The Defendant did not cause the delay[.]" Because Judge Castellano did not take any additional testimony but relied on the prior record in the case, I assume that he was not setting aside any fact-findings made by Judge Blackmer. *Cf. Paulson v. Meinke,* 352 N.W.2d 191 (N.D.1984) (in non-jury trial, replacement judge should not alter findings made by predecessor judge who heard and observed witnesses and whose findings required evaluation of credibility of witnesses); Note, *Replacing Finders of Fact— Judge, Juror, Administrative Hearing Officer,* 68 Colum.L.Rev. 1317, 1379 (1968) (successor judge should give findings same deference as would appellate court). Inasmuch as Judge Blackmer obviously credited what the state said concerning the reasons for the delay, I would also credit those statements for purposes of this appeal.

Some delay resulted from the request by Defendant's attorney to meet with the prosecutor to discuss evidence that could persuade the prosecutor to dismiss the charges. To the extent that delay is caused by a defense attorney's indication that he can produce exculpatory evidence, the delay works to the advantage of the defendant, should be encouraged, and weighs against the defendant in the calculus. *Cf. United States v. Lovasco,* 431 U.S. 783, 793, 97 S.Ct. 2044, 2050, 52 L.Ed.2d 752 (1977) (in considering a due process challenge to pre-indictment delay, "insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of * * * possibly unwarranted * * * prosecutions"). I am not suggesting that the state should file charges first and ask questions later. On the contrary, when the state's investigation indicates that there is insufficient evidence to prosecute the charge successfully, the charge should not be brought

and, if already filed, should be dismissed pending further investigation. When, however, the state has a prosecutable case and the defendant requests pursuit of certain leads that may prove exculpatory, any delay created by the state's good faith response to the request is the proper responsibility of the defendant. Although *State v. Lujan*, 112 N.M. 346, 815 P.2d 642 (Ct. App.1991), recently held that plea negotiations are not ordinarily an excuse for delay in bringing the defendant to trial, the court had no occasion in that opinion to address specifically delays caused by defense requests made in the course of plea negotiations.

The remaining cause of excessive delay was inadequate resources for the district attorney's office. The staff could not promptly prepare for trial every case that was presented to it by a law enforcement agency, even when the charge was quite serious. Nevertheless, "[u]nintentional delays caused by overcrowded court dockets or understaffed prosecutors" must be considered against the state. *Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56 (1973). They are, however, "to be weighed less heavily than intentional delay, calculated to hamper the defense," *id.;* nor is case overload as negative a reason for delay as "bureaucratic indifference." *Zurla v. State*, 109 N.M. 640, 644, 789 P.2d 588, 592 (1990). *See State v. Garcia*, 110 N.M. 419, 796 P.2d 1115 (Ct.App.1990) (rejecting speedy-trial claims of Co-defendant in this case); *Flowers v. Warden, Connecticut Correctional Inst.*, 853 F.2d 131 (2d Cir.), *cert. denied*, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988) (no violation of right to speedy trial despite seventeen-month incarceration caused by congested courts); *United States v. Askew*, 584 F.2d 960, 962 (10th Cir.1978) (delay caused by conflicting obligations of prosecutor not weighed against government); *Taylor v. United States*, 471 A.2d 999, 1002 (D.C.1983) (institutional delays may be easily outweighed by inadequate assertion of the right or low threshold of prejudice).

## C. *Prejudice*

Defendant testified at length before Judge Blackmer concerning the impact of the proceedings against him: When the incident occurred, Defendant was employed as a juvenile probation officer. Upon his arrest on September 30, 1986, he was immediately suspended without pay. He felt humiliated at being arrested and handcuffed at his place of work. After his arrest he was detained for about six and one-half hours before being released on his own recognizance. The conditions of his release required that he not leave Albuquerque, that he report to his lawyer once a week, and that he not contact the victim's family. The travel restrictions prevented him from going to California for his brother's wedding and from joining his sisters for an apparent vacation in Arizona or Utah. While on suspension, he received gifts of money from his former fellow employees and obtained a job with a friend in the appliance business. Yet he was unable to meet his child support obligations, lost his insurance coverage, and felt degraded.

On December 18, 1986, Defendant was reinstated at work because nothing had come of the charges against him. His duties, however, were changed. He no longer supervised children but handled paperwork. He had enjoyed working with children. Although he had established a good relationship with law enforcement personnel prior to the incident, he felt ostracized after he returned to work.

Upon Defendant's indictment in September 1987, he was again suspended from his job without pay. He had been told that he would be suspended if he was indicted. His only work since the indictment had been repairing cars, apparently for former fellow employees. He felt trapped in his home and was distressed that he could not support his family.

Defendant cried almost every day. At one time he had thought of suicide. He suffered from headaches, tension, nervousness, and nightmares. He had fought more with his wife, especially early on, when he almost got a divorce. He sought help for his psychological problems. He

met for an average of about one hour every two weeks with a counselor who apparently worked upstairs from him. The counselor moved out of state in November 1987. Defendant obtained the services of another professional the following month.

Thus, Defendant's claims of prejudice relate to loss of liberty, economic damage, and psychological harm. His brief also refers to injury to members of his family, but the right involved is a personal right; he supplies no authority to suggest that he can rely on injury to others to support *his* claim of denial of the right to a speedy trial. (Of course, his knowledge of that collateral harm can affect him emotionally, which is a proper consideration.)

The restrictions on Defendant's liberty were not oppressive for purposes of speedy trial analysis. His six-and-one-half-hour incarceration immediately upon his arrest was not a consequence of any delay in the indictment or trial. The constraints imposed by his bond, although sufficient to start the speedy trial clock, were minor. The initial limitation to Albuquerque was relaxed to allow him to go throughout New Mexico after he told his attorney of his need to go to Santa Fe for work. His inability to attend his brother's wedding or to join his sisters for an out-of-state vacation is not entitled to substantial weight, particularly in the absence of any indication that Defendant sought a change in his conditions of release to permit him to join his family on those occasions. The prohibition on contact with the victim's family was hardly a burden.

The economic and psychological injury to Defendant was more significant. He lost his job for approximately two and one-half months after his initial arrest and then lost it again after his indictment. He was psychologically injured by his inability to provide for his family, by the loss of a job he enjoyed (even after he was reinstated at the juvenile probation office he was not permitted to work with juveniles), and by the humiliation of being charged with a serious felony. Because I would be reluctant to hold that a defendant's constitutional right to a speedy trial depends upon how

sensitive an individual the defendant is, I do not place great reliance on the testimony showing the specific psychological injury to Defendant caused by the delays in this case. *Cf. Salandre v. State*, 111 N.M. at 430–31, 806 P.2d at 570–71 (rejecting possibility of expert testimony regarding normal levels of anxiety and concern versus those suffered by the accused). Nevertheless, that testimony was consistent with what one would expect to be the consequences of a serious charge.

To assign proper weight to this prejudice suffered by Defendant, it is necessary to consider the timing of the particular elements of prejudice. For example, *Salandre* cited *State v. Grissom*, 106 N.M. 555, 563, 746 P.2d 661, 669 (Ct.App.1987), for the proposition that "when documentary evidence was destroyed before delay became inordinate, loss of evidence did not constitute prejudice." *Id.* 111 N.M. at 430, 806 P.2d at 570. Later, in finding that the defendant was prejudiced by the state's failure to deliver title documents to him, the *Salandre* court noted, "The period of time during which the delay in this case became inordinate was the period during which the State refused to release these documents." *Id.* at 431, 806 P.2d at 571. In this case the greatest injury to Defendant—both financial and psychological—occurred after the indictment and was caused specifically by the indictment; Defendant lost his job upon being indicted and one can presume that the psychological stress was greatest when Defendant was unemployed and formally charged by indictment. Consequently, the injury to Defendant may have been comparable even if the prosecution had proceeded in timely fashion—the indictment, and the resultant injury, would just have occurred sooner. (There was no evidence at the motion hearings that there had been improper post-indictment delay.) Similarly, the injury to Defendant between the time of his arrest and his reinstatement at work would very likely have occurred even if the district attorney had the resources to work up the case diligently. Two and one-half months is not an inappropriate pre-indictment period. Time is required for law enforcement officers to put

together a file for the district attorney, for the district attorney to assign an assistant to the case, and for the assistant to prepare the matter for the grand jury. In short, the most significant part of the prejudice to Defendant would probably have resulted even if there had been no improper delay.

Finally, of critical importance is Defendant's failure to assert any prejudice to his defense of the charge against him. As the United States Supreme Court has stated, prejudice of this type is "the most serious ..., because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. The full import of that proposition is reflected in the Court's analysis of the facts in *Barker* itself. The Court wrote:

> [P]rejudice was *minimal.* Of course, Barker was prejudiced to some extent by living for over four years with a cloud of suspicion and anxiety. Moreover, although he was released on bond for most of the period, he did spend 10 months in jail before trial. But there is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay.

*Id.* at 534, 92 S.Ct. at 2194 (emphasis added).

By *Barker's* standards—which, after all, are the standards we are required to apply—the prejudice to Defendant must be termed "minimal."

### D. *Assertion of the Right*

The assertion by a Defendant of the right to a speedy trial is relevant in two respects: (1) Delay by the state in the face of a defendant's demand for a speedy trial is less excusable than if the defendant has not pressed for a speedy trial. *See Zurla v. State.* (2) "The strength of a defendant's assertions of the right (i.e., early and/or frequent) also indicates the probable extent to which the defendant has suffered from the inevitable burdens that fall upon the target of a criminal prosecution, burdens the speedy trial right was intended to minimize." *Id.* 109 N.M. at 644, 789 P.2d at 592. The significance in this regard of the defendant's demand for a speedy trial derives from the fact that delay may actually benefit a defendant. *See Barker v. Wingo,* 407 U.S. at 521, 92 S.Ct. at 2187 ("[D]eprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic.") A defendant's demands both establish that the defendant is not desirous of delay and serve as a fair measure of the balance of prejudice being suffered by the defendant. *See id.* at 531–32, 92 S.Ct. at 2192–93; *State v. Tartaglia,* 109 N.M. 801, 807, 791 P.2d 76, 82 (Ct.App.1990) (Hartz, J., dissenting).

In light of the reasons why assertion of the right is relevant, Defendant's motion to dismiss does not support his claim of denial of the right to a speedy trial. First, Defendant does not contend, nor is there any evidence in the record to support a contention, that there was any improper delay in the proceedings from the time that the motion was filed until the trial. The state did not delay in the face of a demand by Defendant.

Second, the motion to dismiss is not probative of prejudice being suffered by Defendant. The motion was not filed in an effort by Defendant to accelerate the proceedings in order to prevent or reduce prejudice to him. One month before Defendant filed the motion, the district court had already set the case for trial. Thus, the purpose of the motion was to *avoid* trial. Perhaps even more importantly, prior to filing the motion to dismiss, Defendant had failed to take readily available steps to bring matters to a head sooner. As noted in findings by Judge Blackmer in his order of December 28, 1988, Defendant was represented promptly after his arrest in September 1986 by counsel experienced in criminal law. An unindicted defendant is entitled to a preliminary examination within 60 days of the initial appearance. SCRA 1986, 7–202(D); *see* SCRA 1986, 7–501(A)(8) (defendant to be advised at initial appearance of right to preliminary examination). Yet Defendant's attorney made no effort to require the state to either proceed with a preliminary examination (which would have

initiated a series of time constraints for events culminating in trial, *see* SCRA 1986, 5–901) or dismiss the charge, *cf. State v. Tollardo,* 99 N.M. 115, 654 P.2d 568 (Ct. App.1982) (dismissal not the proper remedy for good-cause delay in holding a preliminary examination when prejudice to defendant not shown).

The assertion-of-the-right factor should not be weighed in favor of the Defendant whenever a motion to dismiss on speedy trial grounds is filed prior to trial. Although *Work v. State,* 111 N.M. 145, 147, 803 P.2d 234, 236 (1990), may suggest that proposition, *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) (court of appeals must follow law established by supreme court), does not compel this court to adopt that view because (1) *Work* merely states the result (the assertion-of-right factor was weighed in favor of the defendant) rather than analyzing the law and propounding a general principle and (2) *Work* was not an opinion of the majority of our Supreme Court. Given these limitations on *Work* as a controlling precedent on this point, it is appropriate to follow the persuasive authority that Defendant's motion to dismiss does not necessarily cause the assertion-of-the-right factor to weigh in his favor.

One persuasive authority is *Barker v. Wingo* itself. Barker moved to dismiss the indictment (although it is not clear what the grounds were) when the prosecution sought a continuance some twenty months before the actual trial, objected to other continuances seven months and four months before trial, and invoked his right to a speedy trial in moving to dismiss the case at the outset of trial. But the Supreme Court noted that Barker had not objected to continuances during the 40 months prior to his motion to dismiss nor to the first two continuances following his motion to dismiss. The Court wrote, "[T]he record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." 407 U.S. at 535, 92 S.Ct. at 2194. Indeed, at oral argument before the Supreme Court, counsel for Barker said: "I would concede that Willie Mae Barker probably—I don't know this for a fact—probably did not want to be tried. I don't think any man wants to be tried." *Id.*

The observation about human nature uttered by Barker's counsel certainly contains much truth. Few people look forward to a trial. We should not reject common sense and infer (a) a desire to advance the trial date from (b) a motion to dismiss that was filed after a trial date had been set. Such a motion, if it does not succeed in foreclosing trial altogether, is more likely to delay trial than to accelerate it. Thus, it is not surprising that courts regularly have found that the assertion-of-the-right factor weighs against the defendant despite a motion to dismiss on speedy trial grounds, particularly when the motion was filed well after arrest or indictment. *See United States v. Avalos,* 541 F.2d 1100, 1115 (5th Cir.1976) (motion to dismiss eleven months after arrest and four months before trial); *United States v. Palmer,* 537 F.2d 1287 (5th Cir.1976) (thirty months after arrest—which was one month after notice of indictment—and three months before trial); *Thompkins v. State,* 437 So.2d 634, 635 (Ala.1983) (four months before trial); *State v. Johnson,* 190 Conn. 541, 461 A.2d 981, 984 (1983) (fourteen months after arrest, seven weeks before trial); *Graves v. United States,* 490 A.2d 1086, 1098–1101 (D.C.App.1984) (ten months after arrest, fourteen months before trial); *State v. Murphy,* 496 A.2d 623, 628 (Me.1985) (one year after arrest, thirteen months before trial); *Simonsen v. State,* 662 S.W.2d 607 (Tex.Ct.App.1983) (seven months after arrest, two months before trial); *Prince v. State,* 638 S.W.2d 550, 554 (Tex.Ct.App. 1982).

### III. Analysis

*Barker* formulates "a balancing test in which the interests and conduct of both the defendant and the prosecutor must be weighed." *The Supreme Court, 1971 Term,* 86 Harv.L.Rev. 52, 166 (1972). The purpose of the assessment of the four factors listed in *Barker* is to focus the inquiry as to whether the prejudice to the

interests of the defendant has been sufficient, in light of the conduct of the parties, to override the public interest in trying the defendant on the pending charge. Although *Barker* did not supply a mathematical formula to determine from the four factors whether the speedy trial right has been violated, at least the result in *Barker* serves as a benchmark.

Given the result in *Barker*, I conclude that the state did not violate Defendant's right to a speedy trial. Two of the factors were much more favorable to Barker than they are to Defendant, and the other two factors are toss-ups:

(1) The delay in *Barker*—more than five years—was far longer than in this case.

(2) The prejudice to Barker (which the Supreme Court termed "minimal")—ten months in jail and four years of anxiety and living under a cloud of suspicion— was substantially greater than the prejudice to Defendant, the great bulk of which would have occurred in the absence of any improper delay.

(3) Barker asserted his interest in advancing the date of his trial at least as strongly as Defendant: Barker was consistent in opposing delays for at least seven months, and his objections to continuances (regardless of the motive behind the objections) would have resulted in an earlier trial if they had been granted. Defendant, on the other hand, did nothing to indicate a desire to resolve the charges promptly, despite the opportunity to do so.

(4) The reason for the delay in *Barker*—awaiting completion of the prosecution of co-defendant Manning (whose first four trials ended in two hung juries and two convictions that were reversed on appeal), so that Manning could testify against Barker—may at first seem more justifiable than the inadequacy of prosecutorial resources here. Yet, as the *Barker* court noted, "[F]our years was too long a period [to wait for Manning], particularly since a good part of that period was attributable to the Commonwealth's failure or inability to try Manning under circumstances that comported with due process." 407 U.S. at 534, 92 S.Ct. at 2194. It would be hard to say that this factor weighs more heavily for Defendant than it did for Barker.

Thus, in light of the conduct of the parties, the prejudice to Defendant caused by improper delay was not substantial enough to override the public interest in trying him on the pending charge.

Perhaps in December 1986 the state should have dismissed the charge pending an indictment, as it became apparent that presentation of the case to the grand jury might be delayed for months. Then Defendant would have had no speedy trial claim. *See United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (speedy trial clause does not apply to period after good faith formal dismissal of charge). But such a dismissal would not have materially benefitted Defendant, which is probably why defense counsel did not seek dismissal.

As *Barker* stated, "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." 407 U.S. at 522, 92 S.Ct. at 2188, quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). The majority opinion improperly denies the rights of public justice. Therefore, I respectfully dissent.